539 S.E.2d 87

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Henry Theodore ALLEN, II, Defendant Below, Appellant.**

No. 25980.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 22, 1999.

Decided Nov. 17, 1999.

Dissenting Opinion of Chief Justice Starcher Jan. 6, 2000.

Bruce M. White, Parkersburg, West Virginia, Attorney for the Appellant.

Jodie M. Boylen, Assistant Prosecuting Attorney for Wood County, Parkersburg, West Virginia, Attorney for the Appellee.

DAVIS, Justice:

The appellant herein, and defendant below, Henry Theodore Allen, II [hereinafter "Allen" or "the defendant"], appeals from the July 17, 1998, sentencing order entered by the Circuit Court of Wood County. In that order, the circuit court sentenced Allen to an aggregate term of imprisonment in the county jail of seven years, two months, and four days as a result of his multiple misdemeanor convictions. On appeal to this Court, Allen complains that (1) the trial court erroneously refused to instruct the jury on his theories of duress or coercion; (2) his consecutive sentences violate the constitutional prohibition of cruel and unusual punishment; (3) the trial court's failure to consider rehabilitation in rendering his sentences denied him his equal protection rights; (4) his multiple sentences for flight constitute double jeopardy; and (5) the trial court abused its discretion in ordering his sentences to run consecutively instead of concurrently. Having reviewed the arguments of the parties, the appellate record, and the pertinent authorities, we find no error in the trial court's rulings. Therefore, we affirm the decision of the Wood County Circuit Court.

## I.

### FACTUAL AND PROCEDURAL HISTORY

The evidence presented during the jury trial of this matter gives rise to the following facts. During the early evening hours of November 8, 1997, defendant Allen was driving his automobile through the streets of Parkersburg, West Virginia. Officer Fred Scott, of the Parkersburg Police Department [hereinafter "Officer Scott"], recognized Allen, believed him to be driving unlawfully on a suspended driver's license, and followed him, in part because of an outstanding warrant for Allen's arrest resulting from his nonappearance in magistrate court.[1] Upon reaching an intersection, Allen failed to stop at a stop sign, and Officer Scott, activating the lights and siren on his patrol car, attempted to stop him. Allen continued driving until he reached an alley at which point he vacated his car and hid in another automobile parked nearby.

Several law enforcement officials eventually located Allen in the parked car and requested him to exit the vehicle. While Allen was responding to the officers, they spotted a firearm in the vehicle with Allen and extricated him from the car. Allen struggled with the officers and resisted arrest.[2] As Officer Scott was placing him in his patrol car, Allen, who had been forcibly handcuffed, escaped on foot to a friend's home.[3]

The following day, November 9, 1997, the Parkersburg Police Department learned that defendant Allen was at a friend's home. When law enforcement officers reached the dwelling, however, they were unable to capture Allen, who had already vacated the

---

1. The record is unclear as to the nature of the offense with which Allen previously had been charged in magistrate court.

2. The arresting officers charged Allen with driving on a suspended driver's license, fleeing law enforcement officials and eluding capture, and obstructing an officer. They also executed the outstanding warrant resulting from Allen's failure to appear in magistrate court.

3. Allen testified that he fled the arresting officers because they had kicked and beat him during the arrest and because they threatened to beat him further once he had been transported to the police station. Following Allen's escape, authorities searched the automobile that Allen had been driving and that he had vacated in the alley. They discovered crack cocaine, and other paraphernalia indicative of illegal drug activity, in the vehicle.

premises. Despite a subsequent sighting of Allen and a brief foot pursuit, Allen eluded authorities by escaping into a wooded area.

Later that same day, Parkersburg resident Robert L. Cross [hereinafter "Mr. Cross"] discovered Allen in the garage of his home. Mr. Cross reported the defendant's whereabouts to authorities, who surrounded the premises. Allen then commandeered Mr. Cross's truck, which was parked in the garage, and fled by crashing through the closed garage door. After driving a short distance, Allen lost control of the vehicle and ran into some shrubbery. He once again fled on foot, but, with the help of a police helicopter, Parkersburg police finally captured Allen and placed him under arrest.[4]

4. Trial testimony indicated that Allen again struggled with the arresting officers. Allen claimed that he resisted arrest because he was afraid that he would be beaten in accordance with the threats the officers allegedly made when they arrested him the day before. Although Allen indicated at the time of his capture that he intended to accuse the various officers of "police brutality," authorities at the jail reported that when Allen was placed into a holding cell immediately after his arrest, he repeatedly struck his head against the cell door. In addition, a paramedic testified that Allen refused treatment for his injuries. Allen then enlisted a friend to take pictures of his battered face during his subsequent arraignment.

5. The crimes charged in the indictment are as follows:
 COUNT ONE: possession of a controlled substance with the intent to deliver, in violation of W. Va.Code § 60A-4-401(a) (1983) (Repl.Vol. 1997);
 COUNT TWO: fleeing from an officer in a vehicle, in violation of W. Va.Code § 61-5-17(c) (1997) (Repl.Vol.1997);
 COUNT THREE: fleeing from an officer by any means other than in a vehicle, in violation of W. Va.Code § 61-5-17(b) (1997) (Repl.Vol. 1997);
 COUNT FOUR: obstructing an officer, in violation of W. Va.Code § 61-5-17(a) (1997) (Repl.Vol.1997);
 COUNT FIVE: brandishing a firearm, in violation of W. Va.Code § 61-7-11 (1994) (Repl. Vol.1997);
 COUNT SIX: carrying a deadly weapon without a license, in violation of W. Va.Code § 61-7-3(a) (1989) (Repl.Vol.1997);
 COUNT SEVEN: driving on a suspended license, in violation of W. Va.Code § 17B-4-3(a) (1994) (Repl.Vol.1996);
 COUNT EIGHT: petit larceny, in violation of W. Va.Code § 61-3-13(b) (1994) (Repl.Vol. 1997);

A Wood County grand jury thereafter returned an eighteen count indictment charging Allen with illegal conduct in connection with his activities of November 8-9, 1997.[5] During a jury trial of these charges, on May 26-28, 1998, Allen was convicted of fleeing from an officer by any means other than in a vehicle (Counts Three, Fourteen, and Fifteen); obstructing an officer (Counts Four and Thirteen); carrying a deadly weapon without a license (Count Six); driving on a suspended driver's license (Counts Seven and Sixteen); petit larceny (Count Eight) [6]; joyriding (Count Eleven) [7]; fleeing from an officer in a vehicle (Count Twelve); and destruction of property (Counts Seventeen [8] and

 COUNT NINE: breaking and entering, in violation of W. Va.Code § 61-3-12 (1923) (Repl. Vol.1997);
 COUNT TEN: entering without breaking, in violation of W. Va.Code § 61-3-12;
 COUNT ELEVEN: grand larceny, in violation of W. Va.Code § 61-3-13(a) (1994) (Repl.Vol. 1997);
 COUNT TWELVE: fleeing from an officer in a vehicle, in violation of W. Va.Code § 61-5-17(c);
 COUNT THIRTEEN: obstructing an officer, in violation of W. Va.Code § 61-5-17(a);
 COUNT FOURTEEN: fleeing from an officer by any means other than in a vehicle, in violation of W. Va.Code § 61-5-17(b);
 COUNT FIFTEEN: fleeing from an officer by any means other than in a vehicle, in violation of W. Va.Code § 61-5-17(b);
 COUNT SIXTEEN: driving on a suspended license, in violation of W. Va.Code § 17B-4-3(a);
 COUNT SEVENTEEN: destruction of property, in violation of W. Va.Code § 61-3-30 (1975) (Repl.Vol.1997); and
 COUNT EIGHTEEN: destruction of property, in violation of W. Va.Code § 61-3-30.

6. The petit larceny charge and conviction concerned Allen's taking of Officer Scott's handcuffs when he fled on November 8, 1997.

7. Although Count Eleven charged grand larceny with respect to Allen's appropriation of Mr. Cross's truck, he was convicted of joyriding, a lesser included offense of the grand larceny charge. *Compare* W. Va.Code § 61-3-13(a) (1994) (Repl.Vol.1997) (defining crime of grand larceny) *with* W. Va.Code § 17A-8-4 (1951) (Repl.Vol.1996) (establishing crime of joyriding).

8. Count Seventeen involves the damage to Mr. Cross's truck.

Eighteen [9]).[10]

By order entered July 17, 1998, the circuit court imposed sentences and fines for Allen's convictions: twelve months in the county jail and a $100 fine for each of the three fleeing without a vehicle convictions (Counts Three, Fourteen, and Fifteen); six months in the county jail and a $500 fine for each of the two obstructing convictions (Counts Four and Thirteen); twelve months in the county jail and a $1,000 fine for the unlicensed carrying of a deadly weapon (Count Six); forty-eight hours in the county jail and a $200 fine for each of the two driving on a suspended license convictions (Counts Seven and Sixteen); two months in the county jail and $23 in restitution for the petit larceny of Officer Scott's handcuffs (Count Eight); six months in the county jail for joyriding (Count Eleven); twelve months in the county jail and a $500 fine for fleeing in a vehicle (Count Twelve); and three months in the county jail and a $500 fine for each of the two destruction of property convictions (Counts Seventeen and Eighteen), plus restitution for the property destruction in the amount of $5,690.22. In its discretion, the circuit court determined that Allen's sentences should run consecutively, resulting in an aggregate term of imprisonment in the county jail of seven years, two months, and four days. From these convictions and sentences, Allen appeals to this Court.

## II.

## STANDARD OF REVIEW

■ Prior to addressing the merits of Allen's contentions, it is necessary to ascertain the appropriate standard of review. Generally,

[i]n reviewing challenges to the findings and conclusions of the circuit court, we apply a two-prong deferential standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

Syl. pt. 2, *Walker v. West Virginia Ethics Comm'n*, 201 W.Va. 108, 492 S.E.2d 167 (1997). Given the numerous distinctive errors assigned by Allen, we will consider more specific standards of review in conjunction with the issues to which they pertain.

## III.

## DISCUSSION

On appeal to this Court, Allen assigns five errors: (1) the trial court incorrectly refused his proffered jury instruction on duress and coercion; (2) his consecutive misdemeanor sentences constitute unconstitutional cruel and unusual punishment; (3) the trial court denied him his right to equal protection of the law by failing to consider rehabilitation in imposing his sentences; (4) his multiple convictions for flight violate his constitutional right to be free from double jeopardy; and (5) the trial court abused its discretion in imposing consecutive, rather than concurrent, sentences. We, in turn, will consider each assignment.

### A. Refusal of Defendant's Duress or Coercion Instruction

■ Allen first assigns as error the trial court's refusal to give Defendant's Instruction Number 1 regarding duress or coercion.[11] When reviewing challenges to jury

---

9. The damage to Mr. Cross's garage door is the subject of Count Eighteen.

10. As to the other counts charged in the indictment, the trial court directed a verdict in Allen's favor on Count Nine (breaking and entering) and Count Ten (entering without breaking), dismissing these charges. With respect to the remaining charges, the jury acquitted the defendant of Count One (possession of a controlled substance with the intent to deliver), Count Two (fleeing an officer in a vehicle), and Count Five (brandishing a firearm).

11. Defendant's Instruction Number 1 reads:
 In general, an act that would otherwise be a crime may be excused if it was done under compulsion or duress, because then is no criminal intent. The compulsion or coercion that will excuse an otherwise criminal act must be present, imminent, and impending, and such as would induce a well-grounded apprehension of death or serious bodily harm if the criminal act is not done; it must be continuous and there must be no reasonable opportunity to escape the compulsion without committing the crime. The threat of future injury is not enough.

instructions, we generally look first to the record of the trial court proceedings to ensure that the claimed instructional error has been properly preserved for appellate review. This preservation of perceived error is crucial because "[a]n appellate court looks primarily to the persuasiveness of the trial court's reasons for [rulings on alleged errors] and gives due regard not only to the factors that inform our opinion but also to its superior point of vantage." *In re Tiffany Marie S.*, 196 W.Va. 223, 236, 470 S.E.2d 177, 190 (1996). Thus,

> "[w]hen a litigant deems himself or herself aggrieved by what he or she considers to be an important occurrence in the course of a trial or an erroneous ruling by a trial court, he or she ordinarily must object then and there or forfeit any right to complain at a later time. The pedigree for this rule is of ancient vintage, and it is premised on the notion that calling an error to the trial court's attention affords an opportunity to correct the problem before irreparable harm occurs."

> If the evidence in the case leaves you with a reasonable doubt that the defendant acted willfully and voluntarily, and not as a result of coercion, compulsion or duress as just explained, then it is your duty to find the defendant not guilty.

With this instruction, Allen attempted to explain to the jury his claimed motive for his repeated flights from the law enforcement officials who sought his capture and arrest, *i.e.*, his alleged fear that he would be beaten when the officers took him into custody. *See supra* notes 3 and 4. *See also* Syl. pt. 1, *State v. Tanner*, 171 W.Va. 529, 301 S.E.2d 160 (1982) ("In general, an act that would otherwise be a crime may be excused if it was done under compulsion or duress, because there is then no criminal intent. The compulsion or coercion that will excuse an otherwise criminal act must be present, imminent, and impending, and such as would induce a well-grounded apprehension of death or serious bodily harm if the criminal act is not done; it must be continuous; and there must be no reasonable opportunity to escape the compulsion without committing the crime. A threat of future injury is not enough.").

12. Despite our reluctance to review inadequately preserved errors, this Court may, under the appropriate circumstances, consider an issue initially presented for consideration on appeal. First,

> [w]hen a defendant assigns an error in a criminal case for the first time on direct ap-

*State v. Salmons*, 203 W.Va. 561, 569, 509 S.E.2d 842, 850 (1998) (quoting *State v. LaRock*, 196 W.Va. 294, 316, 470 S.E.2d 613, 635 (1996)). For this reason, "[a]s a general rule, ... errors assigned for the first time in an appellate court will not be regarded in any matter of which the trial court had jurisdiction or which might have been remedied in the trial court if objected to there." Syl. pt. 17, in part, *State v. Thomas*, 157 W.Va. 640, 203 S.E.2d 445 (1974). In other words, "[t]his Court will not consider an error which is not properly preserved in the record nor apparent on the face of the record." Syl. pt. 4, *State v. Browning*, 199 W.Va. 417, 485 S.E.2d 1 (1997).

Upon a review of the record of the proceedings underlying the instant appeal, we can locate nothing to indicate that Allen objected to the trial court's denial of his proffered instruction. In the absence of a proper objection to the trial court's ruling, we find this assignment of error to have been waived and accordingly decline further consideration of the matter.[12]

peal, the state does not object to the assignment of error and actually briefs the matter, and the record is adequately developed on the issue, *this Court may, in its discretion, review* the merits of the assignment of error.

Syl. pt. 3, *State v. Salmons*, 203 W.Va. 561, 509 S.E.2d 842 (1998) (emphasis added). Nevertheless, we find no compelling reason to exercise our discretion in this instance to undertake a review of the assigned error.

In the alternative, this Court may consider the trial court's refusal to give a requested jury instruction, even if the proffering party does not object to the court's ruling, where such refusal constitutes plain error.

" 'No party may assign as error the giving or the refusal to give an instruction unless he objects thereto before the arguments to the jury are begun, stating distinctly, as to any given instruction, the matter to which he objects and the grounds of his objection; *but the court or any appellate court, may, in the interest of justice, notice plain error in the giving or refusal to give an instruction, whether or not it has been made subject of an objection.'* Rule 51, in part, *W. Va. RCP.*" Syllabus point 1, *Shia v. Chvasta*, 180 W.Va. 510, 377 S.E.2d 644 (1988).

Syl. pt. 5, *Page v. Columbia Natural Resources, Inc.*, 198 W.Va. 378, 480 S.E.2d 817 (1996) (emphasis added). By its very nature, the plain error standard is reserved for only the most egregious errors. "Alleged errors of a constitutional magnitude will generally trigger a review

### B. Cruel and Unusual Punishment

Next, defendant Allen complains that the consecutive sentences he received for his multiple convictions violate his right to freedom from cruel and unusual punishment, guaranteed by the Eighth Amendment to the United States Constitution [13] and Article III, Section 5 of the West Virginia Constitution [14]. The basis for this argument is Allen's contention that his aggregate term of imprisonment is disproportionate to the crimes of which he was convicted. *Citing* Syl. pt. 5, *State v. Cooper,* 172 W.Va. 266, 304 S.E.2d 851 (1983) ("Punishment may be constitutionally impermissible, although not cruel or unusual in its method, if it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity, thereby violating West Virginia Constitution, Article III, Section 5 that prohibits a penalty that is not proportionate to the character and degree of an offense."); Syl. pt. 8, *State v. Vance,* 164 W.Va. 216, 262 S.E.2d 423 (1980) ("Article III, Section 5 of the West Virginia Constitution, which contains the cruel and unusual punishment counterpart to the Eighth Amendment of the United States Constitution, has an express statement of the proportionality principle: 'Penalties shall be proportioned to the character and degree of the offence.' ").

▮▮▮ To review this assignment, it is first necessary to examine the applicable penal statutes.

"The general rule supported by the weight of authority is that a judgment rendered by a court in a criminal case must conform strictly to the statute which prescribes the punishment to be imposed

by this Court under the plain error doctrine." *State v. Salmons,* 203 W.Va. at 571 n. 13, 509 S.E.2d at 852 n. 13. As the error alleged herein is not of constitutional proportions, we again are unpersuaded to give it further consideration.

**13.** The federal prohibition of cruel and unusual punishment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

**14.** Article III, Section 5 of the West Virginia Constitution similarly forbids the imposition of cruel and unusual punishment:

and that any variation from its provisions, either in the character or the extent of the punishment inflicted, renders the judgment absolutely void." Point 3, Syllabus, *State ex rel. Nicholson v. Boles,* 148 W.Va. 229[, 134 S.E.2d 576 (1964) ].

Syllabus point 1, *State ex rel. Boner v. Boles,* 148 W.Va. 802, 137 S.E.2d 418 (1964), *overruled on other grounds by State v. Eden,* 163 W.Va. 370, 256 S.E.2d 868 (1979). Two general statutes, as well as the specific statutes criminalizing Allen's behavior and establishing penalties therefor, govern the challenged sentences.

W. Va.Code § 61–11–17 (1988) (Repl.Vol. 1997), the first pertinent statute, commits the calculation of sentences for misdemeanor offenses to the discretion of the sentencing court where there exists no law defining the precise sentence:

The term of confinement in jail of a person found guilty of a misdemeanor, where that punishment is prescribed, shall, unless otherwise provided, be ascertained by the court, and the amount of the fine, where the punishment is by fine, shall, except where it is otherwise provided, be assessed by the court, so far as the term of confinement and the amount of the fine are not fixed by law. In addition to or in lieu of any other punishment prescribed herein, the court may require the person found guilty of such misdemeanor to participate in the litter control program.

*Cf.* Syl. pt. 4, *State v. Shelton,* 78 W.Va. 1, 88 S.E. 454 (1916) ("A misdemeanor, where no statute fixes the punishment, is punished by fine or imprisonment in the county jail, or both, at the discretion of the court.").[15]

Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted. Penalties shall be proportioned to the character and degree of the offence. No person shall be transported out of, or forced to leave the State for any offence committed within the same....

**15.** The prior version of this statute, Sec. 22, Chap. 152, W. Va.Code (Acts 1882, c. 151) (Main Vol.1916), which was in force at the time of the Court's holding in Syllabus point 4 of *State v. Shelton,* 78 W.Va. 1, 88 S.E. 454 (1916), is virtually identical to the current form of this law, set forth in W. Va.Code § 61–11–17 (1988) (Repl.

When the meaning of a statute is plain and incapable of multiple constructions, it is our duty to apply, not construe, the language adopted by the Legislature. Syl. pt. 5, in part, *Walker v. West Virginia Ethics Comm'n*, 201 W.Va. 108, 492 S.E.2d 167 ("Where the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation." (internal quotations and citations omitted)). *See also DeVane v. Kennedy*, 205 W.Va. 519, 529, 519 S.E.2d 622, 632 (1999) ("Where the language of a statutory provision is plain, its terms should be applied as written and not construed." (citations omitted)).

In defining the authority of courts to impose punishment for misdemeanor crimes, the Legislature employed the term "shall." Generally, "shall" commands a mandatory connotation and denotes that the described behavior is directory, rather than discretionary. *See* Syl. pt. 1, *E.H. v. Matin*, 201 W.Va. 463, 498 S.E.2d 35 (1997) (" 'It is well established that the word "shall," in the absence of language in the statute showing a contrary intent on the part of the Legislature, should be afforded a mandatory connotation.' Syllabus Point 1, *Nelson v. West Virginia Public Employees Insurance Board*, 171 W.Va. 445, 300 S.E.2d 86 (1982)."); Syl. pt. 9, *State ex rel. Goff v. Merrifield*, 191 W.Va. 473, 446 S.E.2d 695 (1994) (same). Thus, it is apparent that the Legislature intended to vest in courts the absolute power to punish misdemeanants where no definite penalty is provided by law. Consistent with the unambiguous terminology employed in this section, we hold that the plain language of W. Va.Code § 61–11–17 (1988) (Repl.Vol.1997) places the imposition of punishment for misdemeanor offenses within the discretion of the sentencing court where there exists no law otherwise providing for such punishment.

The second applicable statute, W. Va.Code § 61–11–21 (1923) (Repl.Vol.1997), directs:

[w]hen any person is convicted of two or more offenses, before sentence is pronounced for either, the confinement to which he may be sentenced upon the second, or any subsequent conviction, shall commence at the termination of the previous term or terms of confinement, unless, in the discretion of the trial court, the second or any subsequent conviction is ordered by the court to run concurrently with the first term of imprisonment imposed.

Having previously examined this statutory language, we held, in Syllabus point 3 of *Keith v. Leverette*, 163 W.Va. 98, 254 S.E.2d 700 (1979), "[w]hen a defendant has been convicted of two separate crimes, before sentence is pronounced for either, the trial court may, in its discretion, provide that the sentences run concurrently, and unless it does so provide, the sentences will run consecutively." Therefore, it is apparent that the sentencing court also has the discretion to determine whether simultaneously-imposed sentences will run consecutively or concurrently.

Lastly, Allen's sentences are governed by the statutes which criminalize the conduct of which he was convicted: fleeing with and without a vehicle, obstruction, carrying a deadly weapon without a license, driving on a suspended license, petit larceny, joyriding, and destruction of property. The first category of convictions, flight, is described in W. Va.Code § 61–5–17(b, c) (1997) (Repl.Vol. 1997). Both flight with a vehicle and flight without a vehicle are punishable by up to one year in the county jail; for each of his four convictions of flight, the trial court sentenced Allen to the maximum term of twelve months' imprisonment in the county jail. Next, Allen was convicted of two counts of obstruction. While W. Va.Code § 61–5–17(a) (1997) (Repl.Vol.1997) permits a county jail sentence of up to one year for this offense, the trial court sentenced Allen to six months

Vol.1997). The sole variance between these two provisions is the inclusion, in the present statute, of the additional language contained in its last sentence: "In addition to or in lieu of any other punishment prescribed herein, the court may re-

quire the person found guilty of such misdemeanor to participate in the litter control program." W. Va.Code § 61–11–17 (1988) (Repl. Vol.1997).

in county jail for each of these two convictions.

Allen's third conviction was for carrying a deadly weapon without a license, which conduct is prohibited by W. Va.Code § 61–7–3(a) (1989) (Repl.Vol.1997). For this crime, the trial court sentenced Allen to the statutory maximum term of imprisonment for a first offense: twelve months in the county jail. Additionally, Allen was convicted of driving on a suspended license, pursuant to W. Va. Code § 17B–4–3(a) (1994) (Repl.Vol.1996); each of these two convictions resulted in the standard forty-eight hours' imprisonment for a first offense of this crime.[16] Fifth, the jury found Allen guilty of petit larceny. W. Va. Code § 61–3–13(b) (1994) (Repl.Vol.1997) permits the imposition of sentence for up to one year in the county jail for this crime; the court sentenced Allen to two months for petit larceny.

Allen also was convicted of joyriding, a crime recognized by W. Va.Code § 17A–8–4 (1951) (Repl.Vol.1996). At the time Allen committed his act of joyriding, the applicable statute did not provide specific limits for the term of imprisonment attributable to this crime.[17] The current version of this provision, W. Va.Code § 17A–8–4 (1999) (Supp. 1999), permits county jail imprisonment for up to six months for first offense joyriding.[18]

Allen received a six months' sentence for this crime. Lastly, Allen was convicted of two counts of destruction of property. The statutory maximum term of county jail confinement is incarceration for up to one year. W. Va.Code § 61–3–30 (1975) (Repl.Vol.1997). For each of his two destruction of property convictions, the trial court sentenced Allen to three months in the county jail. After imposing these discrete sentences, the trial court further ordered Allen to serve his sentences consecutively.

A review of the sentences imposed by the trial court for Allen's numerous convictions demonstrates that the court sentenced Allen in accordance with the statutorily recommended sentences; exercised its discretion in sentencing Allen for the crime of joyriding, for which no definite sentence had been established; and discretionarily determined that Allen would serve such sentences consecutively, and not concurrently. Typically, "[s]entences imposed by the trial court, if within statutory limits and if not based on some unpermissible factor, are not subject to appellate review." Syl. pt. 4, *State v. Goodnight*, 169 W.Va. 366, 287 S.E.2d 504 (1982). *Accord State v. Murrell*, 201 W.Va. 648, 652, 499 S.E.2d 870, 874 (1997) ("[W]e have consistently held that 'it is this Court's practice not to interfere with a sentence imposed

---

**16.** The Legislature recently has eliminated the forty-eight hour jail sentence punishment for first offense driving on a suspended license. *See* W. Va.Code § 17B–4–3(a) (1999) (Supp.1999).

**17.** The language of the joyriding statute applicable to Allen's conviction thereof and sentence therefor provides:

Any person who drives a vehicle, not his own, without consent of the owner thereof, and with intent temporarily to deprive said owner of his possession of such vehicle, without intent to steal the same, is guilty of a misdemeanor. The consent of the owner of a vehicle to its taking or driving shall not in any case be presumed or implied because of such owner's consent on a previous occasion to the taking or driving of such vehicle by the same or a different person. Any person who assists in, or is a party or accessory to or an accomplice in any such unauthorized taking or driving, is guilty of a misdemeanor.

W. Va.Code § 17A–8–4 (1951) (Repl.Vol.1996).

**18.** The present joyriding statute, W. Va.Code § 17A–8–4 (1999) (Supp.1999), is almost identi-

cal in its definition of the crime as its predecessor. See *supra* note 17 for the language of W. Va.Code § 17A–8–4 (1951) (Repl.Vol.1996) and compare W. Va.Code § 17A–8–4(a) (1999) (Supp. 1999). That portion of the new statute which defines specific penalties for this crime states:

Any person violating the provisions of this section is, for the first offense, guilty of a misdemeanor and, upon conviction thereof, shall be fined not more than five hundred dollars, or confined in the county or regional jail not more than six months, or both; for the second offense, is guilty of a felony and, upon conviction thereof, shall be fined not more than three thousand dollars, or imprisoned in a state correctional facility for not less than one nor more than three years, or imprisoned in a regional jail for not more than one year, or both fined and imprisoned; for third or subsequent offenses, is guilty of a felony and, upon conviction thereof, shall be fined not more than five thousand dollars, or imprisoned in a state correctional facility for not less than one nor more than three years or both.

W. Va.Code § 17A–8–4(b) (1999) (Supp.1999).

within legislatively prescribed limits, so long as the trial judge did not consider any impermissible factors.' " (quoting *State v. Farr,* 193 W.Va. 355, 358, 456 S.E.2d 199, 202 (1995) (per curiam) (additional citations omitted))); *State v. Sugg,* 193 W.Va. 388, 406, 456 S.E.2d 469, 487 (1995) ("As a general proposition, we will not disturb a sentence following a criminal conviction if it falls within the range of what is permitted under the statute."). As demonstrated above, all of the sentences imposed by the trial court for Allen's various misdemeanor convictions, with the exception of his joyriding offense, were within the statutory limits of punishment for these crimes. With respect to Allen's joyriding conviction, the trial court possessed the discretion to impose a jail sentence for this crime as the applicable statute did not provide a specific term of imprisonment for this offense. *See* W. Va.Code § 61–11–17. Looking to the current joyriding statute for guidance, we note that the statutorily-established sentence for this crime is "confine[ment] in the county or regional jail [for] not more than six months." W. Va.Code § 17A–8–4(b) (1999) (Supp.1999). As the six-month sentence imposed by the trial court for Allen's joyriding conviction is substantially similar to the current punishment for this crime, we find no error with this sentence.

 Given that Allen's sentences were within "statutory limits," we must proceed to determine whether some "unpermissible factor" tainted the court's sentencing decision. *See* Syl. pt. 4, *Goodnight,* 169 W.Va. 366, 287 S.E.2d 504. Reiterating our prior observations, a trial court has broad discretion in imposing sentences for misdemeanor crimes and in ordering whether such sentences will run concurrently or consecutively. *See* W. Va.Code §§ 61–11–17; 61–11–21. Typically, a grant of discretion to a lower court commands this Court to extend substantial deference to such discretionary decisions. Although this Court may not necessarily have obtained the same result had we been presiding over a case determined by a lower court, our mere disagreement with such a ruling

does not automatically lead to the conclusion that the lower court abused its discretion.

"Where the law commits a determination to a trial judge and his discretion is exercised with judicial balance, the decision should not be overruled unless the reviewing court is actuated, not by a desire to reach a different result, but by a firm conviction that an abuse of discretion has been committed."

*Jordache Enters., Inc. v. National Union Fire Ins. Co. of Pittsburgh, Pa.,* 204 W.Va. 465, 473, 513 S.E.2d 692, 700 (1998) (quoting *Intercity Realty Co. v. Gibson,* 154 W.Va. 369, 377, 175 S.E.2d 452, 457 (1970) (internal quotations and citations omitted)). *See also Hensley v. West Virginia Dep't of Health & Human Resources,* 203 W.Va. 456, 461, 508 S.E.2d 616, 621 (1998) (" 'Under the abuse of discretion standard, we will not disturb a circuit court's decision unless the circuit court makes a clear error of judgment or exceeds the bounds of permissible choices in the circumstances.' " (quoting *Gribben v. Kirk,* 195 W.Va. 488, 500, 466 S.E.2d 147, 159 (1995))).

 With respect to the sentences imposed for Allen's numerous misdemeanor convictions, we find that the trial court properly sentenced the defendant in accordance with the statutorily-prescribed punishments for such crimes. As for the circuit court's decision to impose consecutive, rather than concurrent, sentences, we likewise find no abuse of discretion. At this juncture, however, we wish to emphasize that, while the members of this Court, had we been sentencing Allen for his numerous misdemeanor convictions, would not necessarily have ordered his sentences to run consecutively, this disagreement, standing alone, does not necessitate a reversal of the sentences imposed by the trial court. Finding no impermissible factors influenced the trial court's sentencing decision, we affirm the lower court's ruling.

In challenging the propriety of his sentences, Allen contends that this aggregate jail sentence is disproportionate to the misdemeanor classification of his various convictions.[19] Given the Legislature's specific

---

**19.** To determine whether a sentence is disproportionate to its corresponding crime, this Court, in *State v. Cooper,* set forth two tests.

grant of discretionary authority to sentencing courts through not one, but two, distinct penal statutes applicable to misdemeanor convictions, *see* W. Va.Code §§ 61–11–17; 61–11–21, and the trial court's adherence to such statutes in the case *sub judice*, we are reluctant to find the cumulative effect of Allen's multiple sentences to be impermissible. Moreover, the refinement of the statutory default standard, whereby simultaneous sentences are to be served consecutively, regardless of the classification of the underlying convictions, is more properly within the province of the Legislature, as it is that tribunal which viewed the wisdom of enacting such a stringent law. *See* W. Va.Code § 61–11–21.

Furthermore, "[w]hile our constitutional proportionality standards theoretically can apply to any criminal sentence, they are basically applicable to those sentences where there is either no fixed maximum set by statute or where there is a life recidivist sentence." *Wanstreet v. Bordenkircher*, 166 W.Va. 523, 531, 276 S.E.2d 205, 211 (1981). Because this case involves neither the possibility of unlimited sentences nor a life recidivist statute, we decline Allen's invitation to apply proportionality principles herein. In closing, we note, however, that our decision to uphold Allen's aggregate sentence for his multiple misdemeanor convictions is consistent with the law of our sister jurisdictions which have reached results akin to that obtained in the instant appeal, either by judicial rule or through penal statutes that permit cumulative sentences for misdemeanor crimes. *See, e.g., California v. Hibbard*, 231 Cal.App.3d 145, 282 Cal.Rptr. 351 (1991) (upholding ten-year term of imprisonment for defendant's twelve misdemeanor convictions of alcohol and drug-related traffic offenses); *South Carolina v. Fogle*, 256 S.C. 149, 181 S.E.2d 483 (1971) (interpreting S.C.Code Ann. § 17–553 (1962) (current S.C.Code Ann. § 17–25–30 (1976) (Law Co-op. Main Vol. 1985)), which permits courts to impose sentence where punishment is not defined by statute, as limiting to ten years term of incarceration for misdemeanor convictions); *Tilley v. Wyoming*, 912 P.2d 1140 (Wyo.1996) (affirming lower court's imposition of seven consecutive one-year sentences for seven misdemeanor obscene telephone call convictions). *Cf. Phelps v. Alabama*, 16 Ala.App. 161, 75 So. 877 (1917) (holding that when aggregate of consecutive sentences for misdemeanor offenses is greater than two years' confinement in the county jail, defendant should be sentenced instead to state penitentiary).

### C. Equal Protection

Allen additionally contends that he was denied his constitutional right to equal protection of the law, as provided by the Fourteenth Amendment to the United States Constitution[20] and Article III, Section 1 of the West Virginia Constitution[21], because the

---

There are two tests to determine whether a sentence is so disproportionate to a crime that it violates our constitution. *Accord, Stockton v. Leeke*, 269 S.C. 459[, 463], 237 S.E.2d 896, 897 (1977) [ (per curiam) ]. The first is subjective and asks whether the sentence for the particular crime shocks the conscience of the court and society. If a sentence is so offensive that it cannot pass a societal and judicial sense of justice, the inquiry need not proceed further. When it cannot be said that a sentence shocks the conscience, a disproportionality challenge is guided by the objective test we spelled out in Syllabus Point 5 of *Wanstreet v. Bordenkircher*, 166 W.Va. 523, 276 S.E.2d 205 (1981):

In determining whether a given sentence violates the proportionality principle found in Article III, Section 5 of the West Virginia Constitution, consideration is given to the nature of the offense, the legislative purpose behind the punishment, a comparison of the punishment with what would be inflicted in other jurisdictions, and a comparison with other offenses within the same jurisdiction. 172 W.Va. 266, 272, 304 S.E.2d 851, 857 (1983).

**20.** The equal protection clause is embodied in the Fourteenth Amendment to the United States Constitution: "No State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

**21.** The state counterpart to the equal protection clause provides:

All men are, by nature, equally free and independent, and have certain inherent rights, of which, when they enter into a state of society, they cannot, by any compact, deprive or divest their posterity, namely: the enjoyment of life and liberty, with the means of acquiring and possessing property, and of pursuing and obtaining happiness and safety. W. Va. Const. art. III, § 1.

circuit court's decision to sentence him to county jail and refusal to consider alternative sentencing[22] deprive him of rehabilitation. He contends that the law of this State provides him with a right to rehabilitation. *Citing* Syl. pt. 2, *Cooper v. Gwinn*, 171 W.Va. 245, 298 S.E.2d 781 (1981) ("Inmates incarcerated in West Virginia state prisons have a right to rehabilitation established by W. Va.Code §§ 62–13–1 and 62–13–4 (Cum. Supp.1980), and enforceable through the substantive due process mandate of article 3, section 10 of the West Virginia Constitution."). Because persons convicted of felonies are sentenced to state penitentiaries and receive rehabilitation, whereas misdemeanants sentenced to county jails have no such opportunity, Allen suggests that this legislative classification of similarly situated individuals results in unconstitutional differential treatment. Allen further argues that the circuit court's refusal to sentence him under the youthful male offenders laws, W. Va.Code § 25–4–1, *et seq.*, likewise deprives him of rights that similarly situated individuals, who have been convicted of felonies, may enjoy, but which he has been denied by his county jail sentence.

▮▮▮ The argument presented by Allen on this point is two-fold. First, we consider whether the circuit court erred by refusing to sentence Allen as a youthful offender. W. Va.Code § 25–4–1 (1955) (Repl.Vol.1999) delineates the objective of the youthful male offenders statutes:

[t]he purpose of this article is to provide appropriate facilities for the housing of youthful male offenders convicted of or pleading guilty to violation of law before courts with original jurisdiction or juvenile courts, who are amenable to discipline other than in close confinement; to secure a better classification, and segregation of such persons according to their capabilities, interests, and responsiveness to control and responsibility; to reduce the necessity of expanding the existing grounds and housing facilities for the confinement of such persons, and to give better opportunity to youthful offenders for reformation and encouragement of self-discipline.[23]

(Footnote added). Classification of an individual as a youthful offender rests within the sound discretion of the circuit court.

The judge of any court with original criminal jurisdiction *may* suspend the imposition of sentence of any male youth convicted of or pleading guilty to a criminal offense, other than an offense punishable by life imprisonment, who has attained his sixteenth birthday but has not reached his twenty-first birthday at the time of the commission of the crime, and commit him to the custody of the West Virginia commissioner of public institutions [corrections] to be assigned to a center....[24]

W. Va.Code § 25–4–6 (1975) (Repl.Vol.1999) (emphasis added) (footnote added). When determining whether youthful offender classification is proper,

[t]he determination of fitness for treatment as a youthful male offender should be predicated on factors relating to the sub-

22. Defendant Allen was nineteen years old at the time he committed his offenses in November, 1997, and twenty years old at the time of his trial in May, 1998. The youthful offender laws permit alternative sentencing for individuals who were between the ages of sixteen and twenty-one at the time they committed the crime(s) necessitating their punishment. *See* W. Va.Code § 25–4–6 (1975) (Repl.Vol.1999). *See also* W. Va.Code § 25–4–6 (1999) (Supp.1999) (amending statute to limit youthful offender status to individuals between the ages of eighteen and twenty-one).

23. Following Allen's sentencing, the Legislature, in 1999, amended the youthful offenders provisions, in part to make the statutory language gender neutral. *See* W. Va.Code § 25–4–1 (1999) (Supp.1999) ("The purpose of this article is to provide appropriate facilities for the housing of *young adult offenders* convicted of or pleading guilty to violation of law before courts with original jurisdiction, who are amenable to discipline other than in close confinement, and to give better opportunity to *young adult offenders* for reformation and encouragement of self-discipline." (emphasis added)).

24. The present version of W. Va.Code § 25–4–6 (1999) (Supp.1999), which was enacted after Allen's sentencing, employs gender neutral language and changes the age range for youthful offender treatment from sixteen to twenty-one to eighteen to twenty-one. *Compare* W. Va.Code § 25–4–6 (1975) *with* W. Va.Code § 25–4–6 (1999).

ject's background and his rehabilitation prospects. Of necessity, the decision to treat a person as a youthful male offender is based on the fact that he will benefit and respond to the rehabilitative atmosphere of a detention center.

*State v. Hersman,* 161 W.Va. 371, 376, 242 S.E.2d 559, 561 (1978).

■ Under the facts and circumstances of this case, we do not find that the trial court abused its discretion by refusing to classify Allen as a youthful offender. Of primary importance in granting a particular defendant youthful offender status is the likelihood that he or she can be reformed into a responsible member of society. *See* W. Va.Code § 25-4-1. In refusing Allen's request, the trial court determined, based upon the defendant's prior record and the pre-sentence investigation report, that alternative sentencing was not appropriate.

> He [defendant Allen] has a long history of failing to comply with authorities, and he is, in the Court's opinion, not unlikely to again commit crimes. He is, in fact, likely to, based on his past history, and certainly cannot be found, as the statute requires, to be a candidate for probation or alternative sentencing....
>
> So based on the report of the probation officer, and [the] safety and interests of this community, it is the opinion of the Court that the Court must deny probation or any other form of alternative sentence.

Given the trial court's consideration of Allen's prior history and its belief that Allen would again violate the law,[25] we do not find that the circuit court abused its discretion in

**25.** In fact, the trial court's prophecy that Allen would "again commit crimes" rang true when, in November of 1998, the defendant escaped from jail and attempted to elude capture.

**26.** That is not to say, however, that Allen is either completely devoid of relief or without a remedy for his complaint concerning the conditions of his confinement.

> " 'Habeas corpus lies to secure relief from conditions of imprisonment which constitute cruel and unusual punishment in violation of the provisions of Article III, Section 5, of the Constitution of West Virginia and of the Eighth Amendment to the Constitution of the United

denying his request to be treated as a youthful offender.

■ Allen also complains that, because he was sentenced to county jail, he has been deprived of the rehabilitative opportunities that would otherwise have been available to him had he been incarcerated in a state correctional facility. While we appreciate the gravity of this allegation, this matter, in its present posture, is without sufficient factual development to give it the appropriate attention and consideration it deserves. *See Whitlow v. Board of Educ. of Kanawha County,* 190 W.Va. 223, 226, 438 S.E.2d 15, 18 (1993) (noting that "when an issue has not been raised below, the facts underlying that issue will not have been developed in such a way so that a disposition can be made on appeal"); *State ex rel. Lehman v. Strickler,* 174 W.Va. 809, 811, 329 S.E.2d 882, 884–85 (1985) (deferring ruling on issue of prison conditions given "fully developed factual record" thereof in companion case). In the absence of information regarding the type of conditions Allen faces in his present place of incarceration in the county jail as compared to the nature of rehabilitation available to penitentiary prisoners, it is simply impossible for us to evaluate the merits of this assignment of error.[26] Accordingly, we decline further review, within the confines of the instant appeal, of Allen's request that he be afforded rehabilitative opportunities while he is incarcerated in county jail.

### D. Double Jeopardy

Furthermore, Allen argues that the double jeopardy protections afforded by the Fifth Amendment to the United States Constitution[27] and Article III, Section 5 of the West

States.' Syllabus point 1, *State ex rel. Pingley v. Coiner,* 155 W.Va. 591, 186 S.E.2d 220 (1972)." Syl. pt. 1, *State ex rel. K.W. v. Werner,* 161 W.Va. 192, 242 S.E.2d 907 (1978).

Syl. pt. 2, *State ex rel. J.D.W. v. Harris,* 173 W.Va. 690, 319 S.E.2d 815 (1984). Alternatively, " '[a]n action based on 42 U.S.C.A. § 1983 can be maintained in our State courts to challenge prison conditions.' Syllabus Point 2, *Mitchem v. Melton,* 167 W.Va. 21, 277 S.E.2d 895 (1981)." Syl. pt. 4, *Skaff v. West Virginia Human Rights Comm'n,* 191 W.Va. 161, 444 S.E.2d 39 (1994).

**27.** The United States Constitution, in the Fifth Amendment thereto, prohibits double jeopardy: "[N]o ... person [shall] be subject for the same

Virginia Constitution[28] were violated by his multiple convictions of, and accompanying sentences for, flight. In this regard, the defendant first urges that all of the separate counts of flight of which he was convicted, *i.e.*, three counts of fleeing without a vehicle and one count of fleeing in a vehicle, actually comprise just one instance of flight, which occurred over an extended period of time. To buttress this argument, he requests the Court to construe the Legislature's employment of the word "any," which modifies "law-enforcement officer," as suggesting that each discrete act of flight, from its inception to its ultimate conclusion, be considered just one count of continuous flight although numerous law enforcement officers may have been involved in the pursuit and ultimate capture of the fleeing individual. *Citing Florida v. Mitchell*, 719 So.2d 1245 (Fla.Dist.Ct.App. 1998), *review denied*, 729 So.2d 393 (Fla. 1999) (table decision); *Ohio v. Hoffmeyer*, No. 15632, 1992 WL 393164 (Ohio Ct.App. 1992) (unpublished decision).

Allen also takes issue with certain factual circumstances surrounding his flight, indicating that the record contains no evidence that he refused to stop when he was driving Mr. Cross's truck because he crashed when the officers in pursuit activated their lights and sirens. In addition, Allen indicates that, during the various portions of his flight on foot, the pursuing officers did not always command him to stop as suggested by the various counts with which he was charged and of which he ultimately was convicted.

Alleging that his constitutional right to freedom from double jeopardy has been violated, Allen presents a dual argument for our consideration: (1) his actions constituted one, single continuous episode of flight, rather than several separate and discrete counts thereof, and (2) the evidence was insufficient to support his multiple flight convictions. We will address each of these contentions in turn.

When assessing whether the protections of double jeopardy have been violated, we look to the statutes defining the subject offenses and glean the legislative intent expressed therein. " 'A claim that double jeopardy has been violated based on multiple punishments imposed after a single trial is resolved by determining the legislative intent as to punishment.' Syllabus point 7, *State v. Gill*, 187 W.Va. 136, 416 S.E.2d 253 (1992)." Syl. pt. 7, *State v. Easton*, 203 W.Va. 631, 510 S.E.2d 465 (1998).

"In ascertaining legislative intent, a court should look initially at the language of the involved statutes and, if necessary, the legislative history to determine if the legislature has made a clear expression of its intention to aggregate sentences for related crimes. If no such clear legislative intent can be discerned, then the court should analyze the statutes under the test set forth in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), to determine whether each offense requires an element of proof the other does not. If there is an element of proof that is different, then the presumption is that the legislature intended to create separate offenses." Syllabus point 8, *State v. Gill*, 187 W.Va. 136, 416 S.E.2d 253 (1992). Syl. pt. 8, *Easton*, 203 W.Va. 631, 510 S.E.2d 465. *See also* Syl. pt. 8, *State v. Zaccagnini*, 172 W.Va. 491, 308 S.E.2d 131 (1983) ("Where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not.").

The statute under which Allen was convicted of vehicular and nonvehicular flight provides, in relevant part:

(b) Any person who intentionally flees or attempts to flee by any means other than the use of a vehicle from any law-enforcement officer acting in his or her

offense to be twice put in jeopardy of life or limb. . . ."

**28.** The double jeopardy clause contained in the West Virginia Constitution directs that "no[ ] . . .

person, in any criminal case, . . . [shall] be twice put in jeopardy of life or liberty for the same offence." W. Va. Const. art. III, § 5.

official capacity who is attempting to make a lawful arrest of the person, and who knows or reasonably believes that the officer is attempting to arrest him or her, is guilty of a misdemeanor and, upon conviction thereof, shall be fined not less than fifty nor more than five hundred dollars, and may, in the discretion of the court, be confined in the county or regional jail not more than one year.

(c) Any person who intentionally flees or attempts to flee in a vehicle from any law-enforcement officer acting in his or her official capacity, after the officer has given a clear visual or audible signal directing the person to stop, is guilty of a misdemeanor and, upon conviction thereof, shall be fined not less than five hundred nor more than one thousand dollars, and shall be confined in the county or regional jail not more than one year.

W. Va.Code § 61–5–17 (1997) (Repl.Vol. 1997). Examining this statutory language, we are unable to find any indication that the Legislature intended to "aggregate sentences for [the] related crimes" of flight. Syl. pt. 8, in part, *Easton*, 203 W.Va. 631, 510 S.E.2d 465 (internal quotations and citation omitted). Consequently, we must proceed to consider whether the statutory offenses require distinct elements of proof. *See id.* It is apparent that subsection (b), defining nonvehicular flight, and subsection (c), criminalizing vehicular flight, each contain elements that the other does not. Section 61–5–17(b) flight does not involve the use of a vehicle but does require the fleeing individual to "know[ ] or reasonably believe[ ] that the officer is attempting to arrest him or her." Contrariwise, § 61–5–17(c), which involves the use of a vehicle, includes the requirement that "the officer has given a clear visual or audible signal directing the person to stop," instead of requiring the knowledge or belief that an officer is attempting arrest. Facially, then,

the differing elements of proof demonstrate a legislative intent to create two offenses of flight: flight with a vehicle and flight without a vehicle.

Given his several convictions of nonvehicular flight, Allen urges this Court to construe his conduct as constituting one continuous episode of flight, rather than three distinct instances of fleeing, and to interpret the language of W. Va.Code § 61–5–17(b) accordingly. Of the cases upon which Allen relies, one is an unpublished decision from our sister state of Ohio. *See Ohio v. Hoffmeyer*, 1992 WL 393164. We have announced on prior occasions that we generally will not be persuaded by unreported opinions. *See, e.g., Henry v. Benyo*, 203 W.Va. 172, 176 n. 3, 506 S.E.2d 615, 619 n. 3 (1998) (hesitating to "rely upon decisions which the issuing court has not deemed suitable for official publication"); Syl. pt. 3, *Pugh v. Workers' Compensation Comm'r*, 188 W.Va. 414, 424 S.E.2d 759 (1992) ("Unpublished opinions of this Court are of no precedential value and for this reason may not be cited in any court of this state as precedent or authority, except to support a claim of *res judicata*, collateral estoppel, or law of the case."). Thus, we do not find the *Hoffmeyer* decision to be persuasive authority.

The second source of support for Allen's argument, *Florida v. Mitchell*, 719 So.2d 1245 (Fla.Dist.Ct.App.1998), *review denied*, 729 So.2d 393 (Fla.1999) (table decision), is factually and legally distinguishable from the case *sub judice*. In *Mitchell*, the defendant traveled through three counties during the course of his vehicular flight. 719 So.2d at 1246. Applying a statute which is different than the one governing Allen's convictions of *nonvehicular* flight, *see* Fla. Stat. Ann. § 316.1935 (1995),[29] the court determined that Mitchell could be charged with separate counts of *vehicular* flight commensurate with

---

**29.** The vehicular flight statute applied by the *Mitchell* court, Fla. Stat. Ann. § 316.1935 (1995), states, in pertinent part:

(1) It is unlawful for the operator of any vehicle, having knowledge that he or she has been directed to stop such vehicle by a duly authorized law enforcement officer, *willfully* to refuse or fail to stop the vehicle in compliance with such directive or, having stopped in

knowing compliance with the directive, *willfully* to flee in an attempt to elude the officer, and a person who violates this subsection shall, upon conviction, be punished by imprisonment in the county jail for a period not to exceed 1 year, or by fine not to exceed $1,000, or by both such fine and imprisonment.

(Emphasis added). *See also Mitchell*, 719 So.2d at 1247–48.

the various law enforcement officials from whom he fled. By contrast, the instant appeal involves nonvehicular flight, and all of Allen's activities occurred exclusively in Wood County. Thus, we decline to adopt the semantical distinctions relied upon by the Florida District Court of Appeal, and remain unpersuaded by Allen's attempts to secure a single conviction for nonvehicular flight.

In addition to rejecting Allen's linguistic argument, we observe further that the factual circumstances herein sufficiently support Allen's multiple convictions of nonvehicular flight. Of key importance in distinguishing Allen's conduct from one continuous episode of flight are the numerous intervening occurrences infiltrating his escape and culminating in his ultimate capture. The nonvehicular flight charge contained in Count Three of the Indictment, and of which he was found guilty, occurred at the very beginning of Allen's quest for freedom, on November 8, 1997, and consisted of his departure from his vehicle and his subsequent concealment in an acquaintance's parked car. Following his discovery and attempted arrest, Allen continued his journey.

 The next day, November 9, 1997, Allen once again was discovered and pursued by local law enforcement officials. His refusal to acquiesce in his capture resulted in his conviction of nonvehicular flight pursuant to Count Fifteen of the Indictment. . The final count of nonvehicular flight with which Allen was charged and of which he was ultimately convicted, Count Fourteen, arose when Allen attempted to procure from Mr. Cross, with whom he was not acquainted, an automobile to aid in his escape from custody. After navigating Mr. Cross's truck through a closed garage door, declining to stop for the law enforcement officials pursuing him, and leaving Mr. Cross's vehicle in some shrubbery, in which the truck had come to rest, Allen again resumed his adventure by foot, whereupon he was eventually taken into custody. Given the numerous intervening circumstances penetrating his flight from the law enforcement officials who sought his capture and arrest, Allen's multiple convictions for nonvehicular flight do not violate the constitutional prohibition of double jeopardy. In accordance with this ruling, we hereby hold that W. Va.Code § 61–5–17(b) (1997) (Repl.Vol.1997) does not prohibit multiple simultaneous convictions for the offense of nonvehicular flight when, during one extended episode of flight, a defendant commits intervening acts of a criminal nature, such that the various instances of flight are separate and distinct occurrences.[30]

 Allen also challenges the sufficiency of the evidence supporting his flight convictions.

"The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt." Syllabus point 1, *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995).

30. Our holding in this regard is consistent with the law of other jurisdictions. *See, e.g., Robinson v. United States*, 143 F.2d 276, 277 (10th Cir. 1944) ("The same transaction may constitute separate and distinct crimes where it is susceptible of separation into parts, each of which in itself constitutes a completed offense." (footnote omitted)); *Connecticut v. Tweedy*, 219 Conn. 489, 497, 594 A.2d 906, 910–11 (1991) ("[D]istinct repetitions of a prohibited act, 'however closely they may follow each other' ... may be punished as separate crimes without offending the double jeopardy clause." (quoting *Blockburger v. United States*, 284 U.S. 299, 302, 52 S.Ct. 180, 181, 76 L.Ed. 306, 308 (1932)) (additional citations omitted)); *Illinois v. Henderson*, 39 Ill.App.3d 502, 508, 348 N.E.2d 854, 859 (1976) ("The test of multiple offense sentencing is generally stated as whether defendant's conduct is separable or whether each offense is independently motivated.... If a series of separate, closely related acts give rise to distinct offenses requiring different elements of proof, multiple convictions are proper." (citations omitted)); *Tilley v. Wyoming*, 912 P.2d 1140, 1142 (Wyo.1996) (" 'Separate penalties will ordinarily be exacted upon convictions for distinct offenses.' " (quoting *Kennedy v. Wyoming*, 595 P.2d 577, 577 (Wyo.1979), aff'd, 890 P.2d 37 (Wyo.1995)) (additional citation omitted)).

Syl. pt. 3, *State v. Easton*, 203 W.Va. 631, 510 S.E.2d 465. *Accord* Syl. pt. 1, *State v. Starkey*, 161 W.Va. 517, 244 S.E.2d 219 (1978) ("In a criminal case, a verdict of guilt will not be set aside on the ground that it is contrary to the evidence, where the state's evidence is sufficient to convince impartial minds of the guilt of the defendant beyond a reasonable doubt. The evidence is to be viewed in the light most favorable to the prosecution. To warrant interference with a verdict of guilt on the ground of insufficiency of evidence, the court must be convinced that the evidence was manifestly inadequate and that consequent injustice has been done."), *overruled on other grounds by State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163. Accordingly, "[a] reviewing court should not reverse a criminal case on the facts which have been passed upon by the jury, unless the court can say that there is reasonable doubt of guilt and that the verdict must have been the result of misapprehension, or passion and prejudice." Syl. pt. 3, *State v. Sprigg*, 103 W.Va. 404, 137 S.E. 746 (1927).

 The record underlying this appeal suggests that the evidence presented at trial was quite adequate to support Allen's multiple convictions of flight. Having reviewed such evidence, we are not left with the impression that there remains a reasonable doubt as to Allen's guilt of these crimes nor do we find that his convictions were tarnished by "misapprehension, or passion and prejudice." Syl. pt. 3, in part, *id.* Therefore, we conclude that Allen's flight convictions do not offend constitutional principles of double jeopardy, and we affirm the trial court's rulings in this regard.

### E. Trial Court's Discretion to Sentence Concurrently or Consecutively

 Allen lastly asserts that the circuit court abused its discretion by determining that his multiple sentences should run consecutively rather than concurrently. The governing statute, W. Va.Code § 61–11–21 (1923) (Repl.Vol.1997), commands:

[w]hen any person is convicted of two or more offenses, before sentence is pronounced for either, the confinement to which he may be sentenced upon the sec-

ond, or any subsequent conviction, shall commence at the termination of the previous term or terms of confinement, unless, in the discretion of the trial court, the second or any subsequent conviction is ordered by the court to run concurrently with the first term of imprisonment imposed.

From this statutory language, it is apparent that, unless the sentencing court orders otherwise, simultaneous sentences are to be served consecutively. *See* Syl. pt. 3, *Keith v. Leverette*, 163 W.Va. 98, 254 S.E.2d 700 (1979) ("When a defendant has been convicted of two separate crimes, before sentence is pronounced for either, the trial court may, in its discretion, provide that the sentences run concurrently, and unless it does so provide, the sentences will run consecutively."). Apart from a bald assertion that the trial court abused its discretion by imposing consecutive, rather than concurrent, sentences, Allen provides no support for his argument. In the absence of supporting authority, we decline further to review this alleged error because it has not been adequately briefed. *See* W. Va. R.App. P. Rule 10(d) ("The appellant's brief shall follow the same form as the petition for appeal.") and Rule 3(c) ("A petition for appeal shall state the following ...: 3. The assignments of error relied upon on appeal .... [and] 4. Points and authorities relied upon [and] a discussion of law...."); *State v. LaRock*, 196 W.Va. 294, 302, 470 S.E.2d 613, 621 (1996) ("Although we liberally construe briefs in determining issues presented for review, issues which are not raised, *and those mentioned only in passing [which] are not supported with pertinent authority*, are not considered on appeal." (emphasis added) (citation omitted)). *See also Ohio Cellular RSA Ltd. Partnership v. Board of Pub. Works of West Virginia*, 198 W.Va. 416, 424 n. 11, 481 S.E.2d 722, 730 n. 11 (1996) (refusing to address issue on appeal that had not been adequately briefed).

### IV.

### CONCLUSION

Finding no error with the trial court's refusal of Allen's duress or coercion instruction or with the court's sentencing of the

defendant to consecutive sentences in the county jail for his multiple misdemeanor convictions, we affirm the decision of the Circuit Court of Wood County.

Affirmed.

Justice MAYNARD concurs.

Judge RISOVICH, sitting by temporary assignment.

Justice SCOTT did not participate.

STARCHER, Chief Justice, dissenting:
(Filed Jan. 6, 2000)

I dissent because this defendant was clearly the subject of improper "piling on" of criminal charges. Why? Because he acted contemptuously toward the police. I also dissent because the sentence of 7 years in jail is contrary to our law's system of incarceration, where people serving long sentences go to prisons where there are rehabilitative opportunities. I would reverse the defendant's sentences and remand with an order requiring the imposition of concurrent sentences.