# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia, Defendant Below,
Respondent**

**vs) No. 14-0951** (Raleigh County 87-F-546)

**Jamal A. Azeez, Plaintiff Below,
Petitioner**

**FILED**

August 31, 2015

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

*Pro se* petitioner Jamal A. Azeez appeals the Circuit Court of Raleigh County's August 25, 2014, order denying his petition for writ of error *coram nobis*. The State of West Virginia, by counsel Nic Dalton, filed a response.[1] Petitioner filed a reply. On appeal, petitioner raises eight assignments of error.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Following a jury trial in July of 1987, petitioner was convicted of second-degree sexual assault. This conviction stemmed from an incident in which petitioner sexually assaulted a patient at a hospital where he was employed. Thereafter, the circuit court sentenced petitioner to a term of incarceration of ten to twenty years.[2] In June of 1988, petitioner filed a direct appeal with this Court, wherein he raised the following assignments of error: 1) permitting the victim's testimony without a finding of her competency to testify; 2) admitting Dr. Rasheed's deposition in the absence of a showing that she was unavailable to testify; 3) allowing the admission of the results of the vaginal swab in light of the mishandling of such evidence by the hospital; 4) denying petitioner's motion to compel the victim to submit to a psychiatric evaluation; 5) denying petitioner the victim's psychiatric records; and 6) allowing the jury to consider second-degree sexual assault in the absence of evidence of all the elements thereof. Petitioner renewed this petition for appeal on July 26, 1988. The Court refused both petitions for appeal.

---

[1]The Court notes that after the briefing period expired in this matter, we held that, "[i]n West Virginia, the common law writ of error *coram nobis* is available only in criminal proceedings." Syl. Pt. 3, *State v. Hutton*, -- W.Va. --, -- S.E.2d --, 2015 WL 3822814 (W.Va. June 16, 2015).

[2]Petitioner fully discharged his sentence and has been released from incarceration.

1

In June of 1992, petitioner, by counsel Hon. Franklin D. Cleckley, filed a petition for writ of habeas corpus. In his habeas petition, petitioner argued that the circuit court erred: 1) in finding that petitioner was not deprived of a fair criminal trial as guaranteed under Article III, Section 10 of the West Virginia Constitution where the criminal trial court permitted an incompetent witness to testify against him at trial; 2) in finding that petitioner was not denied a fair criminal trial as guaranteed by the state and federal constitutions where the criminal trial court failed to order a mental examination of the alleged victim and the prosecuting attorney failed to make a good faith effort to obtain and produce the complete medical and mental health records of the alleged victim; 3) in finding that petitioner's rights under the Equal Protection Clause of the Fourteenth Amendment were not violated where the trial court permitted the prosecuting attorney to exercise a peremptory challenge to remove a black juror from the jury venire without establishing any legitimate non-discriminatory reason; 4) in finding that petitioner's rights under the Equal Protection Clause of the Fourteenth Amendment were not violated by the prosecution's peremptory challenge of a black juror because he was not a member of the "black" or "Negro" race; 5) in failing to find that petitioner's rights under the Fourteenth Amendment were violated by the prosecution's suppression of and/or failure to reveal an exculpatory physical examination of the alleged victim, which indicated that she had not been raped; and 6) in finding that petitioner's rights under the Confrontation Clause of the Sixth Amendment were not violated by the admission of Dr. Rasheed's deposition testimony, absent a showing that she was unavailable as a witness or that the prosecution made a good faith effort to obtain her presence at trial. Following an omnibus evidentiary hearing, the circuit court denied petitioner habeas relief. Petitioner appealed that denial to this Court.

In January of 1995, this Court heard oral arguments on petitioner's appeal of the circuit court's order denying habeas relief. By order entered July 13, 1995, this Court affirmed the circuit court's order. *See State ex rel. Azeez v. Mangum*, 195 W.Va. 163, 465 S.E.2d 163 (1995). Two years later, petitioner filed a second petition for writ of habeas corpus in the circuit court, which was summarily denied based upon *res judicata*.

In August of 2013, petitioner filed a petition for writ of error *coram nobis*. The State filed a response, or alternatively, a motion to dismiss, arguing that petitioner's claims have previously been fully and finally adjudicated on the merits. Petitioner filed a reply. Following an evidentiary hearing in April of 2014, the circuit court denied petitioner relief based upon *res judicata* and *collateral estoppel* because petitioner's grounds for relief were previously litigated in the Circuit Court of Raleigh County, this Court, and the United States District Court for the Southern District of West Virginia. It is from this order that petitioner appeals.

In this proceeding, we are called upon to review the circuit court's order denying petitioner *coram nobis* relief. In reviewing challenges to the findings and conclusions of the circuit court, we apply the following standard of review:

> "We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review."

*State v. Allen,* 208 W. Va. 144, 150, 539 S.E.2d 87, 93 (1999) (quoting Syl. pt. 2, *Walker v. West Virginia Ethics Comm'n,* 201 W. Va. 108, 492 S.E.2d 167 (1997)).

On appeal to this Court, petitioner reasserts the same claims that were raised during petitioner's direct appeal and in the circuit court, including that the circuit court erred in denying his petition for writ of error *coram nobis* based upon *res judicata*, and denying his claims of prosecutorial and police misconduct, ineffective assistance of counsel, and judicial prejudice. This Court recently held that

> a claim of legal error may be brought in a petition for a writ of error *coram nobis* only in extraordinary circumstances and if the petitioner shows that (1) a more usual remedy is not available; (2) valid reasons exist for not attacking the conviction earlier; (3) there exists a substantial adverse consequence from the conviction; and (4) the error presents a denial of a fundamental constitutional right.

Syl. Pt. 5, *State v. Hutton*, -- W.Va. --, -- S.E.2d --, 2015 WL 3822814 (W.Va. June 16, 2015). Upon our review and consideration of the circuit court's order, the parties' arguments, and record submitted on appeal, we find no error or abuse of discretion by the circuit court. Our review of the record supports the circuit court's decision to deny petitioner's petition for writ of error *coram nobis*. Under the specific facts of this case, petitioner failed to satisfy the necessary criteria enumerated in *Hutton. Id.* Indeed, the circuit court's order includes well-reasoned findings and conclusions as to the assignments of error raised on appeal. Given our conclusion that the circuit court's order and the record before us reflect no clear error or abuse of discretion, we hereby adopt and incorporate the circuit court's findings and conclusions as they relate to petitioner's assignments of error raised herein and direct the Clerk to attach a copy of the circuit court's August 25, 2014, "Order Denying Writ of Error Coram Nobis, Denying Motion to Reconsider, Denying Motion to Dismiss and Order Dismissing Case" to this memorandum decision.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED**: August 31, 2015

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Menis E. Ketchum
Justice Allen H. Loughry II

IN THE CIRCUIT COURT OF RALEIGH COUNTY, WEST VIRGINIA

STATE OF WEST VIRGINIA,

RESPONDENT,

V.

CASE NO. 87-F-546
Judge John A. Hutchison, Division 10

JAMAL AZEEZ,

DEFENDANT/PETITIONER.

## ORDER DENYING WRIT OF ERROR *CORAM NOBIS*, DENYING MOTION TO RECONSIDER, DENYING MOTION TO DISMISS AND ORDER DISMISSING CASE

On or about August 29, 2013, Jamal A. Azeez, the Defendant in the underlying criminal action and the Petitioner herein, filed a Writ of Error Coram Nobis. The Court entered a scheduling order and required the State of West Virginia by the Prosecuting Attorney for Raleigh County to reply to the Writ of Error Coram Nobis. The Court thereafter set a hearing date. On April 11, 2014, the Petitioner appeared in person, *pro se,* and Kristin Keller, Prosecuting Attorney for Raleigh County, appeared for the State of West Virginia.

In responding to the petition filed by Jamal A. Azeez, the Prosecutor filed a Motion to Dismiss the Writ of Error arguing that the doctrine of res judicata precludes a relitigation of the issues raised in this Writ because all issues have been previously raised, argued, and decided. The Petitioner, Mr. Azeez, objected to the motion and the Court heard the parties regarding their positions. After hearing the positions of the parties and after having inquired of both parties regarding certain facts and the exact issues raised, the Court determined that the motion filed by the State of West Virginia was well-founded and the Court granted the motion filed by the Prosecuting Attorney for Raleigh County.

In confirming the decision to dismiss the case, the Court makes the following findings of fact and conclusions of law:

# FINDINGS OF FACT

The history of this case is extensive and reflects numerous actions, hearings, and numerous petitions for Writs of Habeas Corpus. The Petitioner comes now before this Court with a petition for a Writ of Error Coram Nobis. An indictment was issued by the grand jury for Raleigh County West Virginia on the 22nd day of April 1987. The indictment alleged that Jamal Adeen Azeez on or about the 5th day of February 1987 in Raleigh County West Virginia did unlawfully and feloniously engage in sexual intercourse with one, D. L. C. (the Court will use the initials of the victim because of the sensitive nature of the allegations in the criminal case), a female person not his wife, without her consent, and lack of consent resulted from forcible compulsion.

A trial on the indictment began on July 29, 1987, and on the 31st day of July 1987 the jury returned a verdict "We, the jury, find the defendant, Jamal Adeen Azeez GUILTY of 2nd Degree Sexual Assault as charged with in the indictment." Thereafter on October 27, 1987, the Defendant/Petitioner through Kelly M. Pannela, one of Petitioners trial counsel and an Assistant Public Defender, filed a Notice of Intent to Appeal. In the notice of intent to appeal the defendant raised eight specific grounds as follows:

1. "There was insufficient evidence to support a jury finding that the defendant committed 2nd degree sexual assault;
2. The state withheld exculpatory evidence from the defendant;
3. The competency of D. L. C., the alleged victim, was not established by the state at the defendant's trial;
4. The state violated the defendant's rights by allowing employees of the hospital, where the alleged sexual assault occurred, to take a vaginal swab, to test it, to allow it to deteriorate, and to testify to the results thereto at trial;
5. At the defendant's trial, the state admitted the deposition of a Dr. Rashid, but did not prove her unavailability to support this admission;
6. The hospital administration's handling of the alleged sexual assault prevented the defendant from having a fair trial;

7. The admission of test results of a vaginal swab taken from the alleged victim, which was positive for sperm, was prejudicial to the defendant in that it was too generalized and had no probative value except to unfairly prejudice him.

8. The failure of the police to obtain a written statement from the alleged victim violated the defendant's right to confront his accuser." See Notice of Intent to Appeal, Case No. 87-G-546.

On the same day, the defendant by another of his trial counsel, Michael E. Froble, also a Raleigh County Public Defender filed a Motion to Set Aside Jury Verdict. In this motion the defendant raised four issues as follows:

"I. There is insufficient evidence to support a jury finding that the defendant committed 2nd degree sexual assault.

II. The state withheld exculpatory evidence from the defendant.

III. The competency of D.L.C. as a witness was not established by the state.

IV. The state violated the rights of the defendant by allowing employees of BARH to take a vaginal swab, to test it, to allow them to deteriorate and to testify as to the results." See Motion to Set Aside Jury Verdict, Case No. 87-F-546.

In addition to the previously identified motions, the Defendant, by Mr. Froble, filed a Motion for New Trial. The Defendant incorporated the grounds previously set forth in the Motion to Set Aside Jury Verdict and thereafter stated four additional grounds as follows:

"I. The Defendant Incorporates the Grounds Presented in His Motion To Set Aside Jury Verdict.

II. The state did not establish the unavailability of Dr. Rasheed.

III. The hospital administration's handling of the incident of February 5, 1987, prevented the defendant from having a fair trial.

IV. The admission of the test results of positive for sperm (sic) was prejudicial to the defendant." See Motion for New Trial, Case No. 87-F-546.

The Hon. Thomas Canterbury, Judge, denied the post-trial motions filed by the Defendant through counsel and entered an order memorializing his findings.

On or about May 20, 1988, Francis M. Curnutte, III Esq., on behalf of the Defendant, filed in the Supreme Court Of Appeals of West Virginia, an appeal of the final order of the Circuit Court of Raleigh County, West Virginia. In that appeal, Counsel on behalf of the defendant, stated five specific grounds upon which the defendant believed his conviction should be reversed. Those five grounds are as follows:

"A. The Court erred in permitting the testimony of the alleged victim, a severely retarded mental patient, without a finding of her competency to testify.
B. The Court erred in admitting the deposition of Dr. Rasheed in the absence of a showing that she was unavailable as a witness.
C. The Court erred in allowing the admission of the results of the vaginal swab in light of the mishandling of such evidence by the hospital in violation of the Defendant's rights.
D. The Court erred in denying the Defendant's Motion to Compel the Victim to Submit to a Psychiatric Evaluation and in denying the Defendant her Psychiatric records.
E. The Court erred in allowing the jury to consider Second-Degree Sexual Assault in the absence of evidence of all of the elements thereof." See Petition for Appeal, Case No. 87-F-546.

The Supreme Court of Appeals of West Virginia, after review refused to hear the appeal as filed which resulted in a final order of conviction. There was no separate written opinion issued by the Supreme Court in conjunction with its order denying the appeal.

On or about June 11, 1992, a *Petition for a Writ of Habeas Corpus Ad Subjiciendum by a Person in Custody* was filed in the Circuit Court of Raleigh County West Virginia and assigned as Case Number 92-HC-56 to the docket of the Hon. Thomas Canterbury, Judge. The petition, filed by the Hon. Franklin D. Cleckley on behalf of the defendant, alleged in general that the writ was predicated on the denial of the Defendant's constitutional rights under the 6th and 14th amendments to the United States Constitution

and articles 3 and 14 of the West Virginia Constitution. The petition alleged that these constitutional rights were violated when the trial court permitted a conviction of and imposed a sentence for 2nd degree sexual assault upon the Petitioner contrary to the guarantees of a fair trial. Justice Cleckley, on behalf of this defendant, raised as grounds for Habeas relief the following issues:

a. "The Petitioner was deprived of a fair trial when the trial court permitted an incompetent witness to testify. The testimony of the victim, D.L.C., was objectionable under rules 601, 603, 401, 402 and 403 of the West Virginia Rules of Evidence.

b. The issue raised in a. above is exacerbated by the failure of the trial Court to order a mental examination of the victim and the failure of the prosecuting attorney to make a good faith effort to obtain and produce the complete medical and mental records of the victim.

c. The record evidence was insufficient, as a matter of law, to support the verdict under both the *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2ND 560 (1979), and *State v. Dobbs*, 163 W. Va. 630, 259 S.E.2d 829 (1979).

d. The failure of the prosecution to secure and turn over to the defense the medical report of Dr. R. Slack, whether written or oral, and the CIB lab report prior to or during the trial violates *Brady v. Maryland*, 373 U.S.E.2DS. 83, 83 S. Ct. 1194, 10 L. Ed. 2nd 215 (1963) and as modified by *United States v. Bagley*, 473 U.S. 667 105 S. Ct. 3375, 87 L. Ed. 481 (1985).

e. The trial Court denied the Petitioner his confrontation rights under both the Sixth Amendment to the United States Constitution and Article 3, Section 14 of the West Virginia Constitution by admitting as substantive evidence the deposition of Dr. Zarina Rasheed without sufficient evidence to show the unavailability of Dr. Rasheed as required by the West Virginia rules of procedure, rules 804 (a) (5) and (b) (1) of the West Virginia Rules of Evidence and West Virginia Code section 62-3-1.

f. The trial Court committed constitutional error by permitting the prosecution to exercise one of its preemptory strikes against the only black on the jury panel, thus making the panel all white. Because the prosecution was unable to give a nonfrivolous and racially neutral justification for the strike, the trial Court's

ruling affirming the prosecution's conduct violated *Basten v. Kentucky*, 476 U. S. 79, 106 S. Ct. 1712, 90 L. Ed. 2nd 69 (1986) and *State v. Marrs*, 379 S.. E. 2d 497 (W. Va. 1989).

g.  The appellate counsel's failure to raise the most egregious of the trial errors on appeal, i.e., striking the only black from the jury panel, constitutes ineffective assistance of counsel under *Jones v. Barnes*, 463 U.S. 745, 103 S.Ct. 3303, 77 L.Ed.2d 987 (1983) and *Whitt v. Holland*, 342 S.E.2d 292 (W.Va. 1986). Appellate counsel failed to communicate with the Petitioner before filing the appeal and thereby deprived the Petitioner of the benefit of any input into the appellate process. Moreover, appellate counsel failed to present, on appeal, the most serious of all appellate issues.

h.  Being aware of the "successive, abuse and delayed" petition doctrine [*Lash v. McKenzie*, 277 S.E.2d 606 (W. VA. 1981)] the Petitioner hereby places the Court and the respondent on notice that he believes another error may also exist regarding the ineffective assistance of trial counsel. The Petitioner is aware of the admonition of the West Virginia Supreme Court of Appeals not to make claims of ineffective assistance of counsel without an adequate record supporting such charges [*State v. Barker*, 287 S.E.2d 497 (W. Va. 1982)]. Undersigned counsel believe that there are many areas of this trial that beg for explanation from trial counsel, and if this Court grants a hearing on this petition the Petitioner intends to inquire into the following specific areas:

(1) The failure of trial counsel to object to the competency of the victim to be a witness or otherwise challenge her mental competency at trial.

(2) The failure of trial counsel to demand more specific compliance with the trial Court's order requiring production of all mental records of the victim.

(3) The failure of trial counsel to make or otherwise insist on a record regarding the Court's ruling on the mental examination of the victim and the ruling on the production of the mental records.

(4) The failure of trial counsel to raise as a post-conviction motion under Rules 33 or 34 of the West Virginia Rules of Criminal Procedure the prosecution strike of the only black on the jury panel.

(5) The failure of trial counsel not to insist on more coherent answers from the victim or to otherwise obtain an understandable response from the victim.

(6) The failure of trial counsel:

(a) To inquire into what the victim was wearing at the time of the alleged assault such as her underwear and other clothing.

(b) The nature of the bed clothing and how it was situated immediately after the alleged assault.

(7) The failure of trial counsel to explain to the Petitioner during the trial the significance and the wording of the stipulation concerning the medical reports of the CIB law and Dr. Slack.

(8) The failure of trial counsel to request a postponement during trial once it became known that the report of Dr. R. Slack and the CIB lab reports were favorable to defendant but such witness and report were not immediately available.

(9) The failure of trial counsel to require the Court reporter to report the bench conference conducted between counsel, the defendant and the Court prior to trial counsel beginning his cross examination of the victim.

(10) The failure of trial counsel to obtain the medical report of Dr. R. Slack and the CIB lab report, make a reasonable investigation into the facts and circumstances of this case, and to spend the necessary time before trial discussing the case and potential favorable evidence with the defendant as required by *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)." See Petition, Case No. 92-HC-56.

Thereafter, the Hon. Thomas Canterbury reviewed each of the allegations contained in the petition of Jamal Adeen Azeez as filed by the Hon. Franklin Cleckley. Judge Canterbury also heard the oral arguments of counsel and having also heard the evidence provided during the hearing on "Petitioner's Petition for Writ of Habeas Corpus," addressed each of the allegations raised by the Petitioner and ultimately denied the relief demanded as set forth in the final order entered on February 23, 1993.

. After having been denied relief in the Circuit Court of Raleigh County West Virginia, the Petitioner filed an appeal with the Supreme Court of Appeals of West Virginia. Oral argument was made before the Supreme Court and a written opinion was issued. The Supreme Court in *State ex rel. Azeez v. Mangum*, 195 W.Va. 163, 465 S.E.2d 163 (1995) addressed all the issues raised and denied the relief requested on appeal. A review of *Azeez v. Mangum* clearly shows that the Supreme Court addressed all the issues previously considered by Judge Thomas Canterbury during and after the hearing of the

Petition for a Writ of Habeas Corpus ad Subjiciendum by a Person in Custody. A review of both the Petition for Writ of Habeas Corpus and the authored opinion in *Azeez v. Mangum* clearly reveals that the issues addressed in that action were identical or nearly identical to those issues previously raised on direct appeal.

## WRIT OF CORAM NOBIS

For guidance in determining the approach this Court should take regarding this extraordinary writ, this judge has referred to the *Handbook on West Virginia Criminal Procedure*, Franklin D. Cleckley, the Michie Company 1985, 1993. Justice Cleckley, in his discussion of Coram Nobis, explains that the purpose of the writ was to bring to the trial court's attention factual errors of such significance that a guilty verdict would not have been rendered had the facts been known to the Court. Justice Cleckley further explains that Coram Nobis is not an independent proceeding such as habeas corpus, and is to be considered as a part of the original proceedings. This Court therefore ordered this Writ of Error Coram Nobis, filed by Mr. Azeez, to be filed in the original underlying criminal case.

According to the *Handbook*, and the cases cited therein, Coram Nobis is of limited scope and is generally used to vindicate otherwise unprotected constitutional rights. Justice Cleckley recognized in his article that Coram Nobis was frequently used to attack convictions on the basis of errors in fact, and the errors complained of were also constitutional errors of such sufficient magnitude as to have significantly affected the verdict of the trier of fact. *Handbook* at page II-509. The writ of Coram Nobis has generally been recognized as being limited to claims based on facts <u>outside</u> the record

and does not include, according to Justice Cleckley, claims that could have been raised on appeal. See *Id.* at II-509 (emphasis added).

It must be recognized, however, that claims based on facts outside the record and not having been previously raised on appeal may, in limited circumstances, be used to relitigate claims which had been fully litigated during the trial. In these instances the Petitioner must show (1) that the conviction has produced "lingering civil disabilities" and (2) that the error is the type of a defect that would have justified habeas corpus relief during his imprisonment. See *Handbook* at II-509.

The 2013 Cumulative Supplement Volume 2 to the *Handbook on West Virginia Criminal Procedure* discusses the federal court approach to Writs of Error Coram Nobis and confirms that the writ is available when there is a fundamental error resulting in conviction and no other means of relief is available. "A writ of Coram Nobis is typically used to attack a judgment that was infirm at the time it was issued for reasons that later came to light." see *Campbell v. Dewalt*, 2010 U.S. Dist. LEXIS 73768 (S. D. W.Va. July 21, 2010). That case recognized that in order for a Petitioner to obtain relief via Coram Nobis he must show (i) that his conviction or sentence involved an error of the most fundamental character; (ii) that it is probable that a different result would have occurred if not for the error; (iii) that adverse consequences continue to follow from the conviction, such that a case or controversy exists within the meaning of U.S. CONST. Article III; (iv) that a more usual remedy is not presently available to correct the error; and (v) that sound reasons exist for not challenging the error earlier such as by direct appeal or a motion authorized by 28 U.S.C.S. Section 2255.

Justice Cleckley recognizes the impact of *United States v. Morgan,* 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248 (1954) as having revived what some have referred to as the ancient writ of Coram Nobis. However, Justice Cleckley explains that *Morgan* emphasizes that the writ is not a substitute for appeal and can only be employed to correct errors "of the most fundamental character." Morgan also notes that in addition, a Petitioner bears the considerable burden of overcoming the presumption that previous judicial proceedings were correct. See Handbook Supplement at page 409.

A clear reading of Justice Cleckley's coverage of this extraordinary writ instructs that:

1. A Writ of Error Coram Nobis is an extraordinary method to attack a judgment based upon fundamental errors;

2. The writ is limited to correction of errors of fact which were unknown to the Court or the trier of fact at the time the judgment was rendered;

3. That Coram Nobis cannot be used as a substitute for appeal nor to challenge matters which appear on the face of the record of the underlying judgment;

4. That the writ is limited to claims based on facts outside the record and generally does not include claims that could have been raised on appeal;

5. That if the writ is being used in an attempt to attempt to relitigate claims already fully aired at trial then the petitioner must show (1) the conviction has produced lingering "civil disabilities", and (2) the error is a type of defect that would have justified habeas relief during imprisonment. See *Handbook at* II 509.

## Claims of Petitioner

Since the verdict rendered by the jury on July 31, 1987, and during the ensuing 27 years, the Petitioner has filed a variety of lawsuits, petitions, mandamus actions, and other proceedings in both the Courts of the State of West Virginia and Federal District Courts and Federal Courts of Appeals. On page 2 in paragraph 4, the Petitioner contends that he has filed ten habeas corpus petitions, three writs of certiorari, more than twenty-five ancillary actions including DNA petitions, and many collateral pleadings such as civil suits, criminal complaints and mandamus proceedings. This Judge cannot account for every one of the Petitioners claimed and listed actions, but this Judge can confirm that a significant number of petitions, actions and suits of various types have been filed in the Circuit Court of Raleigh County and subsequently assigned to the docket of this Judge.

This matter is filed as a Writ of Error Coram Nobis and was filed on August 29, 2013, in the Circuit Court of Raleigh County West Virginia. On April 11, 2014, the Petitioner and the Prosecuting Attorney for Raleigh County appeared for a hearing on the Petitioner's Writ Of Error Coram Nobis pursuant to a Notice of Hearing issued by this Court.

The Petitioner on page 23 of his petition lists sixteen reasons for granting his writ and the body of the writ mentions several more. This Court after reading the entire document and further having reviewed all the relevant case files, transcripts and other documents on record in the office of the Clerk of the Circuit Court of Raleigh County, it is clear that the Petitioner's current claims are based upon issues and arguments that have been previously litigated in the Circuit Court of Raleigh County, the Supreme Court of West Virginia, and the US District Court for The Southern District of West Virginia. All

the issues that the Petitioner raises in this pleading have been extensively litigated in the above referenced Courts and final judgments have been rendered by those courts. A complete reading of the petition in this case clearly shows that this Petitioner is attempting to reargue and claim as newly discovered evidence, events and issues that the Petitioner previously raised at trial, in post-trial motions, on direct appeal and in numerous habeas corpus petitions, in other pleadings and actions and now in this Writ.

The Petitioner, in all those previous actions, as well as this action, contends that his constitutional rights were violated because (i) evidence was suppressed, (ii) his trial attorney failed to call witnesses, failed to investigate the case and was otherwise ineffective and (iii) the Circuit Court allowed incompetent witnesses to testify as well as making erroneous rulings regarding the admission of challenged evidence.

The chart on page 12 of Petitioner's Writ lists thirteen separate evidentiary issues which the Petitioner believes entitles him to relief. All of these issues were raised in prior proceedings or were such that they could have been raised in prior proceedings. Each evidentiary issue raised, involves matters that were known to the State and the Defendant at the time of trial and most were actually argued during trial, in post-trial hearings, on appeal, and in habeas corpus actions or each ruling could have been argued to the Courts in those prior proceedings.

The Petitioner in this petition rehashes arguments previously made and contends that a judge currently reviewing these issues and the arguments would be required to rule in manner differently than all the Judges and Justices who had previously reviewed these matters. The Petitioner in his Writ even goes so far as to demand that this Judge overrule and rewrite the opinion in *Azeez v. Mangum*, which was authored by Justice Margaret

Workman. While I am sure there are many circuit judges who might enjoy overruling and setting aside an authored Supreme Court opinion, I am likewise convinced that Justice Workman, as well as all other members of the Court, would take a very dim view of a procedure of that nature.

In response to the petition, the State, by Prosecuting Attorney Kristen Keller filed its reply and argued that pursuant to the doctrines of *res judicata* and/or collateral estoppel, this Court is required to dismiss the Writ of Error Coram Nobis on the grounds that the issues raised by the Petitioner had been fully and completely resolved in numerous prior proceedings. The Prosecutor argues that at some point, the state of West Virginia is entitled to finality of a judgment and there must come a time when this litigation must end.

## RES JUDICATA

*Res judicata* "... precludes parties from contesting matters that they have had a full and fair opportunity to litigate [....]" *Montana v. United States*, 440 U.S. 153 (1979). The policy behind this doctrine is "that those who have contested an issue shall be bound by the result of the contest, and that matters once tried shall be considered forever settled as between the parties." *Federated Dep't Stores v. Moitie*, 452 U.S. 401 (1981). The doctrine of res judicata protects "[...] from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana v. United States*, 440 U.S. 153-154 (1979). The Court should follow res judicata even if equity would lead one to another decision. "The doctrine of res judicata serves vital public interests beyond any

individual judge's *ad hoc* determination of the equities in a particular case." *Federated Dep't Stores v. Moitie*, 452 U.S. 401 (1981).

## Elements of Res Judicata

For a matter to be dismissed by the principles of *res judicata*, a three part test must be satisfied.

"First, there must have been a final adjudication on the merits in the prior action by a Court having jurisdiction of the proceedings. Second, the two actions must involve either the same parties or persons in privity with those same parties. Third, the cause of action identified for resolution in the subsequent proceeding either must be identical to the cause of action determined in the prior action or must be such that it could have been resolved, had it been presented, in the prior action." *Blake v. Charleston Area Med. Ctr.*, 201 W.Va. 477 (1997).

To dismiss a case based on the doctrine of res judicata each of the above elements must be satisfied. The first element requires a final adjudication on the merits of the case by a Court with jurisdiction. "An adjudication by a Court having jurisdiction of the subject-matter and the parties is final and conclusive, not only as to the matters actually determined, but as to every other matter which the parties might have litigated as incident thereto and coming within the legitimate purview of the subject-matter of the action." Syl. pt. 4, *State ex rel. Richey v. Hill*, 216 W.Va. 157-158, 603 S.E.2d. 179-180 (2004), citing Syl. pt. 1, *Sayre's Adm'r v. Harpold*, 33 W.Va. 553, 11 S.E. 16 (1890).

The second element requires the same parties from the previous action or parties in privity with those parties to be parties in the current action for the doctrine of res judicata to apply.

The third element can be separated into two prongs that may be satisfied independently of one another. The first prong requires that the current cause of action be identical to a cause action in a previously adjudicated case. To determine if the actions are identical, the Court must look at the evidence required to prove that cause of action. "If the two cases require substantially different evidence to sustain them, the second cannot be said to be the same cause of action and barred by res judicata." *White v. SWCC*, 164 W.Va. 290 (1980). Thus, the evidence required to satisfy the first cause of action must be reviewed to determine if there is any substantial difference in the facts required to bring the second cause of action.

On the other hand, if the matter could have been dealt with in a previous hearing had it been presented, it may satisfy the second prong of the third element of res judicata. "It is not essential that the matter should have been formally put in issue in a former suit, but it is sufficient that the status of the suit was such that the parties might have had the matter disposed of on its merits. An erroneous ruling of the Court will not prevent the matter from being res judicata." Syl. Pt. 1 *Sayre's Adm'r v. Harpold*, 33 W.Va. 553 (1890).

However, if the party was unable to foresee the necessity of litigating the matter in the previous adjudication, *res judicata* should not be used to dismiss the second case. "... [I]t is imperative that the party bringing the subsequent lawsuit was, during the prior action, able to foresee the consequences of his/her failure to raise the subsequently raised issue in the prior action." *Blake v. Charleston Area Med. Ctr.*, 201 W.Va. 477 (1997).

Finally, there is an exception to res judicata that permits the court to refuse to apply the doctrine of res judicata if the court finds that there was fraud or some other

misrepresentation in the matter. "[...] an exception to the preclusion of claims that previously could have been determined exists where the party bringing the subsequent lawsuit claims that fraud, mistake, concealment, or misrepresentation by the defendant of the second suit prevented the subsequent plaintiff from earlier discovering or litigating his/her claims." *Id.* at 477.

The Petitioner herein, claims fraud and concealment in his original trial but makes no such claim regarding the subsequent appeals or habeas petitions or appeals of those habeas rulings. The allegations of fraud and/or concealment were raised both on appeal and in the various habeas petitions filed by this petitioner which allegations were ultimately resolved against him. The exception discussed in *Blake* clearly does not apply in this case.

In conclusion, it is the policy of both state and federal courts to prevent unwarranted and/or unnecessary relitigation of causes of action. The doctrine of res judicata, which has the above referenced three elements, is the method used to enforce this policy and to dismiss these types of cases. The three elements required to dismiss a case under the doctrine of res judicata are (1) a prior final adjudication on the merits in the prior action by a Court with jurisdiction over the issues and parties, (2) parties that are the same from the prior action or in privity with those same parties, and (3) an identical cause of action from the prior proceeding or an opportunity to resolve an identical cause of action existed in the prior proceeding.

## COLLATERAL ESTOPPEL

Collateral estoppel and res judicata often go hand in hand with one another; however, there are some differences. A significant distinction between them is that in the

case of collateral estoppel the same parties do not have to be present for the doctrine to apply. Collateral estoppel also often involves issues instead of causes of action. Causes of action are required for res judicata. "[C]ollateral estoppel requires identical issues raised in successive proceedings and requires a determination of the issues by a valid judgment to which such determination was essential to the judgment." *State v. Miller,* 194 W.Va. 9 (1995). "[U]nder the doctrine of collateral estoppel [...] the second action is upon a different cause of action and the judgment in the prior suit precludes relitigation of issues actually litigated and necessary to the outcome of the first action." Lexis Headnote 3B, Parklane *Hosiery Co. v. Shore,* 439 U.S. 322 (1979).

The policy behind collateral estoppel is similar to that of res judicata. "Collateral estoppel is designed to foreclose relitigation of issues in a second suit which have actually been litigated in the earlier suit even though there may be a difference in the cause of action between the parties of the first and second suit." *Conley v. Spillers,* 171 W.Va. 588 (1983). "Collateral estoppel, like the related doctrine of *res judicata,* has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." *Parklane Hosiery Co. v. Shore,* 439 U.S. 325 (1979), citing *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 328-329 (1971).

## Elements of Collateral Estoppel

There are four elements of collateral estoppel that must be satisfied to dismiss a case under this doctrine.

Collateral estoppel will bar a claim if four conditions are met: (1) the issue previously decided is identical to the one presented in the action in question; (2) there is a

final adjudication on the merits in the prior action; (3) the party against whom the doctrine is invoked was a party or in privity with a party to a prior action; and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action. Syl. Pt. 1 *State v. Miller*, 194 W.Va. 3 (1995).

The first element of collateral estoppel requires identical issues from the previous litigation. To find that they are identical, their procedures and standards must be similar as well. "For purposes of issue preclusion, issues and procedures are not identical or similar if the second action involves application of a different legal standard or substantially different procedural rule, even though the factual settings of both suits may be the same." *Id.* at Syl. Pt. 3.

The case now being decided by Court is analogous to *State ex rel. Richey v. Hill.* In *Richey,* the defendant was convicted of third-degree sexual assault in 1979. Though not incarcerated for the crime, Richey filed multiple habeas petitions in Kanawha County. Judge McQueen dismissed those cases in 1996. Following the dismissal, Richey filed a Coram Nobis petition, a W. Va. R. Civ. P. Rule 60 (b) motion, and a petition for DNA testing. Judge Scott barred the petitions under the doctrine of *res judicata.* In 2002, Mr. Richey filed a motion for DNA testing. The Court denied the motion based upon the principles of *res judicata* because the action was nearly identical to the previous motion denied by Judge Scott. Finally, Mr. Richey filed a motion for DNA testing with the Supreme Court of Appeals of West Virginia. That motion was denied on several grounds, one of which was *res judicata.* See *State ex rel. Richey v. Hill.* The Supreme Court of Appeals of West Virginia ruled that Mr. Richey's case satisfied the three-part-test laid out in *Blake v. Charleston Area Medical Center* and the petition was precluded

by *res judicata*. The Court in Richey emphasized the importance of finalizing legal issues. "In conclusion, we again reiterate that 'the purpose of the legal system is to provide final resolution of legal controversies [.]'" Id. at 189, citing *Wellman v. Energy Resources, Inc.*, 210 W.Va. 200, 207, 557 S.E.2d 254, 261 (2001).

Here, Mr. Azeez has already had a final adjudication and resolution of the legal issues he raises. *Azeez v. Mangum*. His Petition for a Writ of Habeas Corpus was refused upon Circuit Court review and was appealed to the Supreme Court of Appeals of West Virginia. *Id.* at 163. There, the Circuit Judge's decision was affirmed. *Id.* at 163. Thus, the issues that were raised and litigated or could have been raised and litigated have all been previously adjudicated and are precluded from further litigation. The petition for Writ of Error Coram Nobis that is now at issue is based upon the same legal issues. Because they are identical or nearly identical, this writ is barred by *res judicata* and/or collateral estoppel.

## CONCLUSIONS OF LAW

The Court in this case concludes that the motion to dismiss filed by the Prosecuting Attorney for Raleigh County should and must be granted. The Court has reviewed the Writ of Error Coram Nobis in its entirety and has likewise reviewed the Motion for Reconsideration filed by the Petitioner after the April 11, 2014 hearing but before the preparation and entry of this final order, the Court has further reviewed the appropriate case law and all the available documents and available transcripts relating to the case *State v. Jamal Adeen Azeez* case number 87-F-546 in the Circuit Court of Raleigh County West Virginia.

In the case *State ex rel. Azeez v. Mangum*, 195 W.Va. 163, 465 S.E.2d 163 (1995), the Supreme Court of Appeals addressed all the issues raised by the Petitioner in this present petition. It is clear that each one of the criteria required to support dismissal by application of res judicata as recited in *Richey v. Hill* and all other West Virginia cases has been met in this case. There has been a final adjudication on the merits in prior actions. This action and all other actions involving this case involve the same parties or those in privity with the same parties. The causes of action and the issues identified for resolution in this case are identical or nearly identical to the causes of action and/or issues finally adjudicated in the prior cases or were such that they could have been raised and resolved in the prior cases.

In his Writ of Error Coram Nobis, the Petitioner seeks to convince all who might read the document, that all prior review by numerous judges and Courts during the last twenty-seven years, is wrong and that his arguments, reworded and restated from past pleadings, are absolutely correct. Mr. Azeez apparently believes that if he continuously and vociferously makes the same arguments that someone will finally, in exasperation, relent and overturn twenty-seven years of judicial review and findings. In his writ the Petitioner has not provided any new arguments, produced any new evidence, pointed out any new applicable statute or case law or produced any information at all that has not been previously discussed, argued, reviewed, and appealed and thereafter by court order finally resolved.

This Court concludes as a matter of law that this Writ of Error Coram Nobis is without merit and merely rehashes twenty-seven years of arguments and assertions which have been previously reviewed and denied.

*In State ex rel. Richey v. Hill* the Supreme Court of Appeals of West Virginia concluded its opinion denying the petition for mandamus relief by observing that "no one is 'entitled to appeal upon appeal, attack upon attack, and *habeas corpus* upon *habeas corpus*' " and that there is "no fundamental right to the 'continued opportunity to exonerate oneself through the natural course of one's life' " and that "litigation must end sometime and '(t)hat time has come for Mr. (Richey).'"

That time has also come for Jamal A. Azeez. Twenty-seven years and more than thirty-eight petitions, suits, motions and appeals are enough. Litigation in this case must end and it does so now. Mr. Azeez has, *ad nauseam*, argued the same issues and has failed to convince a single reviewer that error has occurred. The Writ of Error Coram Nobis is **ORDERED** denied and this action is dismissed and stricken from the docket. As with the statutes and rules governing *habeas corpus*, this petitioner having been given a full hearing, any future petition or petitions, motions or other actions regarding these causes of action or issues will be summarily dismissed.

## FUTURE ACTIONS

This Petitioner has inundated the Circuit Court of Raleigh County with actions for twenty-seven years and has failed to prevail in any. The Petitioner has always pled pauper status and has further filed these actions without any accountability with regard to good faith pleadings. It is the **ORDER** of this Court that **no** further pleadings from this Petitioner shall be accepted by the Clerk of the Circuit Court of Raleigh County unless and until the Petitioner has provided a full and complete financial statement for review by an appropriate judicial officer to determine his pauper status and further the Clerk shall refuse to accept any pleadings, petitions, motions or actions unless and until the proposed

pleadings, petitions, motions or actions are countersigned by an attorney licensed to practice law in the State of West Virginia verifying that there is a good faith basis for the pleading sought to be filed by this Petitioner.

## MOTION FOR RECONSIDERATION

The Petitioner herein prior to the preparation of this final order filed a Motion for Reconsideration. In that motion, the Petitioner again argues the same issues and makes the same arguments regarding the same causes of actions and issues addressed in this order. Again, the motion was improperly filed and constitutes post-hearing memoranda not authorized or requested by this court. The document was unsigned and there is no indication that a copy was served upon the Prosecuting Attorney and therefore constitutes *ex parte* communication. The court has previously cautioned Mr. Azeez regarding his continued attempts to communicate with the Court in an *ex parte* manner, however, Mr. Azeez continues and this Court has no alternative but to disregard this improperly filed and improperly served motion. It is therefore, **ORDERED** that the motion is denied.

## MOTION TO DISMISS

The Petitioner in this case has filed a Motion to Dismiss seeking to dismiss this and another case related to a conviction for failure to appear. That motion was filed subsequent to the hearing held in the matter of Petitioner's Writ of Error Coram Nobis. The Motion to Dismiss having been improperly filed in this matter and also involving a case or cases not the subject of the current petition the same is hereby **ORDERED** denied and likewise stricken from the docket.

**WHEREFORE,** it is the **ORDER** of this Court that the **Motion to Dismiss** filed by the state of West Virginia in the Writ of Error Coram Nobis is **Granted** for the

reasons stated in this **Order** and the Court further finds that every issue raised by the Petitioner in his Writ of Error Coram Nobis has been previously adjudicated on the merits or every issue raised could have been adjudicated on the merits and that the Petitioner has failed to present any newly discovered evidence which would entitle him to relief. The Motion to Dismiss referenced above is denied as improperly filed in this case.

These matters are **ORDERED** dismissed and stricken from the docket. The Clerk is **ORDERED** to send a copy to the parties at the following addresses:

Kristin Keller, Esq.  
112 N. Heber St.  
Beckley, WV 25801

Jamal A. Azeez  
305 Marguerite Avenue  
South Floral Park, NY 11001

Jamal A. Azeez  
897 Meadow Creek Road  
Summersville, WV 26651

Entered this 25th day of August, 2014.

The foregoing is a true copy of an order entered in this office on the _25_ day of _August_, 20_14_.  
PAUL H. FLANAGAN, Circuit Clerk of Raleigh Co., WV  
By _MBS_ Deputy

**Remove From Docket**  
**By Order of JAH**

Judge John A. Hutchison  
Tenth Judicial Circuit  
8/25/14

**COPIES TO ALL LAWYERS**