**FILED**

**June 14, 2022**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 21-0545, *In re: H.W.*

Walker, J., concurring:

I agree with the majority's conclusion that the circuit court did not err in refusing Petitioners' intervenor status. I write separately to address technical issues unique to these procedural child abuse and neglect proceedings. First, there is a proverbial elephant in this room the majority is not record-equipped to address. I write separately with the hope that the paltry record in this case does not lead to a misinterpretation of the majority opinion as to a right to intervene by foster parents versus kinship parents and relative caregivers. I also write separately because I disagree that a new syllabus point as to the standard of review is necessary or necessarily accurate. In short, I do not agree that West Virginia Code § 49-4-601(h) is a "permissive intervention" statute, and the requisite standards already exist for evaluating whether a person is receiving their statutory *right* to the participation afforded under that statute by applying the de novo review we apply to all statutes. Any level of participation beyond the statutory requirements exists only in the discretion of the circuit court for which we have already articulated a standard of review.

As the majority notes in footnotes three and eleven, it refers to Petitioners, H.W.'s paternal grandparents, as "foster parents." It does so because the paternal grandparents classify themselves as foster parents, the DHHR refers to them as foster parents and does not contest that classification on appeal, and the circuit court relied on statutes and case law as to foster parents in rendering its decision on intervention. Because

intervention was denied, the record on appeal is extremely limited. And, bound as it is by a limited record, the majority did not wish to disturb that classification without sufficient evidence to conclude Petitioners are not, in fact, foster parents, without any argument relative to the definitions of "foster parents" and "relative caregivers" or "kinship placements."[1]

But here's why that classification *does* matter, and why the confusion – if not properly reviewable by the majority in this particular case – needs purged. Petitioners' argument that they should have been granted intervenor status is premised primarily on what is described as the "15-of-the-last-22-months rule," which is derived from both West Virginia Code § 49-4-605(a)(1) and West Virginia Code § 49-4-610(9). The former outlines when DHHR's efforts to terminate parental rights are required and states that such efforts must be made "[i]f a child has been ***in foster care*** for 15 of the most recent 22 months as determined by the earlier of the date of the first judicial finding that the child is subjected to abuse or neglect or the date which is 60 days after the child is removed from

---

[1] As discussed below, West Virginia Code § 49-4-601(h) references "relative caregivers" who are, presumably, relatives providing care to the child (that term is not defined in the Code). "Kinship parent" and "kinship placement" are defined as relatives with whom the child is placed for custody during the pendency of the proceedings. Ultimately, the distinction doesn't matter under this analysis because (1) the import of the analysis is that relatives do not provide foster care (whether relative caregivers or kinship parents), and (2) here, the Petitioners are both relative caregivers and kinship placements.

the home."[2]  Similarly, West Virginia Code § 49-4-610(9) sets limitations on the extension of improvement periods:

> Notwithstanding any other provision of this section, no combination of any improvement periods or extensions thereto may cause a child to be ***in foster care*** more than fifteen months of the most recent twenty-two months, unless the court finds compelling circumstances by clear and convincing evidence that it is in the child's best interests to extend the time limits contained in this paragraph.[3]

Specific to intervention, in examining these statutes, this Court concluded in Syllabus Point 7 of *State ex rel. C.H. v. Faircloth*[4] that ***foster parents*** are entitled to intervene when these statutes are implicated: "***[F]oster parents*** are entitled to intervention as a matter of right when the time limitations contained in West Virginia Code § 49-4-605([a]) (2017) and/or West Virginia Code § 49-4-610(9) (2015) are implicated, suggesting that termination of parental rights is imminent and/or statutorily required."[5]

Petitioners – H.W.'s paternal grandparents – invoke these provisions and our holding *C.H.* to argue that DHHR was required to seek termination of parental rights, that the improvement period could not be further extended, and that *C.H.* affords them the right

---

[2] W. Va. Code § 49-4-605(a)(1) (emphasis added).

[3] Emphasis added.

[4] 240 W. Va. 729, 815 S.E.2d 540 (2018).

[5] Emphasis added.

to intervene.  DHHR and the Guardian respond that termination was not imminent.  But these statutes and *C.H.* are inapposite here because *this child is not in foster care*.  Glaringly absent from West Virginia Code §§ 49-4-605(a)(1), 49-4-610(9), and *C.H.* are "kinship parents" and "relative caregivers."  Stated differently, it matters that Petitioners are not foster parents because relatives (kinship parents or relative caregivers)[6]  do not provide "foster care" and so do not implicate §§ 49-4-605(a)(1), 49-4-610(9), or Syllabus Point 7 of *C.H.* on which Petitioners rely.

My analysis of the relevant statutes lands squarely on the conclusion that the mere fact that Petitioners are paternal grandparents removes them from the characterization as a "foster parent" or their home as a "foster family home."  So, H.W. is not placed "in foster care."  "Foster care" is not defined under Chapter 49, but "foster family home" has been defined since at least 2015.[7]  It is defined at West Virginia Code § 49-1-206 as "a private residence which is used for the care on a residential basis of no more than six children *who are unrelated by blood, marriage, or adoption to any adult member of the household*."[8]

---

[6] *See* n. 1 above.

[7] Effective June 2020, the Legislature amended West Virginia Code § 49-1-206 only to change the language from "no more than five children" to "no more than six children." Substantively, it was otherwise unchanged.

[8] Emphasis added.

In 2020, the Legislature enacted the Foster Child Bill of Rights, West Virginia Code § 49-2-126; the Foster and Kinship Parent Bill of Rights, West Virginia Code § 49-2-127; and created corresponding definitions of "foster parent," "kinship parent," and "kinship placement." "Foster parent" is defined as "a person with whom the department has placed a child and who has been certified by the department, a child placing agency, or another agent of the department to provide foster care."[9] Conversely, the term "kinship parent" is defined as "a person with whom the department has placed a child to provide a kinship placement[,]" and "kinship placement" "means the placement of the child with a relative of the child, as defined herein, or a placement of a child with a fictive kin, as defined herein."[10]

Looking at the definition of "foster parent" in a vacuum, there is no mention that the person must be unrelated as there is in "foster family home." But, as a long-standing tenet of statutory construction, we assume the Legislature was aware of the immediately preceding definition of "foster family home": "[i]n the enactment of a statute the Legislature must be presumed to have acted with full knowledge of the provisions of

---

[9] W. Va. Code § 49-1-206.

[10] *Id.* (emphasis added). "Relative of the child" is further defined as "an adult of at least 21 years of age who is related to the child, by blood or marriage, within at least three degrees." *Id.*

all prior statutes dealing with the same subject matter."[11]  Common sense –without need to resort to statutory construction – tells us that if the definition of "foster parents" was intended to encompass relative placements, there would have been little need to create the term "kinship parent" or "kinship placement."  It is plain that the definition of the "foster family home" refers to the residence used for foster care while "foster parent" refers to the person providing the foster care, but neither contemplates that "foster care" means the child is residing with a relative.

Applying another tenet of statutory construction, statutes relating to the same subject-matter should be read together if there is no internal inconsistency: "[s]tatutes in pari materia must be construed together and the legislative intention, as gathered from the whole of the enactments, must be given effect."[12]  Given that the definitions were enacted at the same time, relate to the same subject-matter, and are utilized in the Foster Child Bill of Rights and the Foster and Kinship Parent Bill of Rights, the statutes are in pari materia. In these enactments, the Legislature has been consistent in referring to relative placements as distinct from foster placements with non-relatives.

---

[11] Syl. Pt. 1, *State v. Jackson*, 120 W. Va. 521, 199 S.E. 876 (1938).  Accord Syl. Pt. 12, *Vest v. Cobb*, 138 W.Va. 660, 76 S.E.2d 885 (1953) ("The Legislature, when it enacts legislation, is presumed to know its prior enactments.").

[12] Syl. Pt. 3, *State ex rel. Graney v. Sims*, 144 W. Va. 72, 105 S.E.2d 886 (1958).

First, as noted above, these terms are defined separately. Second, they are *used* separately, even when kinship parents and foster parents are being afforded the same treatment. The briefest of reviews of the Foster Child Bill of Rights is telling on this point. Despite the title, the first iteration of the enactment is "(a) *Foster children and children in a kinship placement* are active and participating members of the child welfare system and have the following rights[.]"[13] The Foster and Kinship Parent Bill of Rights, similarly differentiates: "*Foster parents and kinship parents* play an integral, indispensable, and vital role in the state's effort to care for children displaced from their homes, and such parents and persons have the following rights[.]"[14] The enactment repeatedly and consistently lists both foster parents and kinship parents as separate classifications, despite providing them same rights.

If the Legislature intended that the 15-of-the-last-22-months rule espoused in West Virginia Code §§ 49-4-605(a)(1) and 49-4-610(9) would apply to both foster placements and placements with relatives, it could have amended those provisions to read that the child could not be placed outside "the home," for example, for longer than 15 of the last 22 months. It did not. In fact, starting with the assumption that the Legislature was aware that that limitation applied only to "foster care" and that we interpreted it as such in *C.H.*, the Legislature doubled down by further distinguishing kinship parents from

---

[13] Emphasis added.

[14] Emphasis added.

foster parents in its 2020 enactments. This Court should apply these statutes as written –

as applicable only to foster care with non-relatives – unless and until the Legislature tells

us that, contrary to the definitions it adopted in 2020, it wants this Court to treat kinship

care as interchangeable with foster care.

Petitioners' status as foster parents or kinship parents/relative caregivers

matters in examining whether Petitioners in this case should have been permitted to

intervene. West Virginia Code § 49-4-601(h) provides that:

> In any proceeding pursuant to this article, the party or
> parties having custodial or other parental rights or
> responsibilities to the child shall be afforded a meaningful
> opportunity to be heard, including the opportunity to testify
> and to present and cross-examine witnesses. *Foster parents,*
> *pre-adoptive parents, and relative caregivers shall also have a*
> *meaningful opportunity to be heard*.[15]

If we incorrectly dub Petitioners "foster parents," West Virginia Code § 49-

4-601(h) does not give them any more right to intervene in the proceedings than if they

were classified as "relative caregivers" but Syllabus Point 7 of *C.H.* (derived from West

Virginia Code §§ 49-5-605(a)(1) and 49-4-610(9)) *does*. Simply put, foster parents have

the same rights of participation as do relative caregivers when it comes to West Virginia

Code § 49-4-601(h) but, as discussed above, *C.H.* and the *right* to intervene is premised on

---

[15] Emphasis added.

West Virginia Code §§ 49-4-605(a)(1) and 49-4-610(9) and applies only to *foster* care placements.

Turning to West Virginia Code § 49-4-601(h), the analysis should be straightforward under the two-tier framework of that provision as espoused in *State ex rel. R.H. v. Bloom*[16] – what classification does the individual fit into, and what rights of participation does the statute guarantee them? Again, that provision states:

> In any proceeding pursuant to this article, the party or parties having custodial or other parental rights or responsibilities to the child shall be afforded a meaningful opportunity to be heard, including the opportunity to testify and to present and cross-examine witnesses. Foster parents, pre-adoptive parents, and relative caregivers shall also have a meaningful opportunity to be heard.

We have explained that under this statute, pre-petition custodians (first tier) are "parties" and with that, have all of the rights attendant to being a party to an action as specified in the statute (meaningful opportunity to be heard, the opportunity to testify, and the right to present and cross-examine witnesses). In appellate terms, party status also affords them a right to challenge the circuit court's determination. Importantly, pre-petition custodians are required to be named as party-respondents in the abuse and neglect

---

[16] No. 17-0002, 2017 WL 1788946, *3 (W.Va. May 5, 2017) (memorandum decision).

petition under West Virginia Code § 49-4-601(b).[17]  The second tier (foster parents, preadoptive parents, and relative caregivers) are afforded only meaningful opportunity to be heard by statute.  But the circuit court may choose to expand the level of participation of these second-tier classifications.

*C.H.* clarified that

> Foster parents, pre-adoptive parents, or relative caregivers who occupy only their statutory role as individuals entitled to a meaningful opportunity to be heard pursuant to West Virginia Code § 49-4-601(h) (2015) are subject to discretionary limitations on the level and type of participation as determined by the circuit court. Foster parents who have been granted the right to intervene are entitled to all the rights and responsibilities of any other party to the action. To the extent that this holding is inconsistent with *In re Jonathan G.*, 198 W. Va. 716, 482 S.E.2d 893 (1996), our holding in *In re Jonathan G.* is hereby modified.[18]

---

[17] West Virginia Code § 49-4-601(b) provides:

> Contents of Petition. – The petition shall be verified by the oath of some credible person having knowledge of the facts. The petition shall allege specific conduct including time and place, how the conduct comes within the statutory definition of neglect or abuse with references to the statute, any supportive services provided by the department to remedy the alleged circumstances, and the relief sought. *Each petition shall name as a party each parent, guardian, custodian,* other person standing *in loco parentis* of or to the child allegedly neglected or abused and state with specificity whether each parent, guardian, custodian, or person standing *in loco parentis* is alleged to have abused or neglected the child.

(emphasis added).

[18] Syl. Pt. 4, *C.H.*

In making that clarification, *C.H.* discussed that foster parents may remain on level with preadoptive parents or relative caregivers under the statute, but West Virginia Code §§ 49-4-605(a)(1) and 49-4-610(9) give foster parents a *right* to intervene when the child has been in their care for 15 of the last 22 months, and a right to be made parties at that point that is not enjoyed by preadoptive parents or relative caregivers: "Foster parents are entitled to intervention as a matter of right when the time limitations contained in West Virginia Code § 49-4-605([a]) (2017) and/or West Virginia Code § 49-4-610(9) (2015) are implicated, suggesting that termination of parental rights is imminent and/or statutorily required."[19]  So, since Petitioners are "relative caregivers" they can claim neither a right to be parties derived from West Virginia Code § 49-4-601(b) – as they are in the second tier of West Virginia Code §49-4-601(h) and are afforded only notice and meaningful opportunity to be heard under that statute – nor intervention as of right under *C.H.* because it does not apply to them.

We then reach the issue of what the majority has termed "permissive intervention."  This is where I deviate from the majority, because in the category of foster parents, relative caregivers and preadoptive parents, West Virginia Code § 49-4-601(h) does not contemplate permissive intervention whatsoever – it simply states the rights of participation of various classifications.  And, as we have previously held, the rights of participation under § 49-4-601(h) are separate and distinct from intervention rights.  So, I

---

[19] *Id.* at syl pt. 7.

disagree with the premise that "permissive" intervention (as opposed to rights of participation) is dictated by *application* of this statute rather than the discretion of the circuit court and further disagree that a syllabus point is necessary when the discretion of the circuit court to expand the participation of the parties is already memorialized by syllabus.

As relative caregivers, the Petitioners were already at the table – they were entitled to notice and meaningful opportunity to be heard. They are not, as discussed, *entitled* to anything more than that by statute. In reaching the conclusion in *C.H.* that foster parents were eventually vested with a right of intervention *through different statutes*, we stated

> What *Beane* properly illustrates is that the right to be heard afforded under West Virginia Code § 49-4-601(h) exists and operates independently of the rights and privileges afforded to intervening parties. Foster parents and others designated in the statute have a right to be heard without the necessity of requesting intervenor status. We find nothing, however, in West Virginia Code § 49-4-601 *et seq.* which *precludes* foster parents from likewise procedurally being granted party-intervenor status where appropriate.[20]

What *C.H.* points out is that West Virginia Code § 49-4-601(h) is not an "intervention" statute – it "exists and operates independently of the rights and privileges afforded to intervening parties." To the extent pre-petition custodians invoke West Virginia Code § 49-4-601(h) to achieve "party" status they were already entitled to under West Virginia

---

[20] *Id.* at 737, 815 S.E.2d at 737.

Code § 49-4-601(b), that standard of review would certainly be de novo under the well-settled and oft-employed "[w]here the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review."[21] Again, the only questions for resolution being, "what classification does this individual fall under, and what right of participation does the statute give them?"

Insofar as intervention is involved, those inquiries involve *only* the classification of a prospective party as first (pre-petition custodian) in which case they should have already been made parties pursuant to a different provision (West Virginia Code § 49-4-601(b)), or as a foster parent with the right to intervene as recognized in *C.H.* (which right to intervention is derived from other statutes, not West Virginia Code § 49-4-601(h)). Beyond classification of pre-petition custodians for intervention *as of right* actually granted under a *different* provision, § 49-4-601(h) contemplates participation, not "intervention."

As *C.H.* makes clear, the statute does not contemplate party-intervenor status, or what the majority has termed "permissive intervention." Rather, we have discussed that under § 49-4-601(h) a circuit court may *choose* to expand the participation of foster parents (separate and apart from "intervention" under the 15-of-the-last-22-months rule), preadoptive parents, and relative caregivers beyond that which is statutorily

---

[21] Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W. Va. 138, 459 S.E.2d 415 (1995).

required (i.e., permitting them the opportunity to testify, to present witnesses, or, perhaps, granting them party-intervenor status). We reiterated in *C.H.* that the circuit court exercises its discretion in setting those parameters for the "right to be heard" second-tier participants based on the needs of the case:

> Those limitations—the discretionary "level and type of participation" to be determined by the circuit court discussed in *Jonathan G.*—are still clearly needed when a foster parent or other statutorily designated individual is participating in a statutory "right to be heard" role. That role is limited by statute and the precise contours of such involvement must necessarily be crafted by the circuit court inasmuch as the statute does not specifically delineate the activities permitted. Our precedent makes clear, however, that whatever *evidentiary* limitations are placed on such parties, a meaningful opportunity to be heard includes notice of and the right to be heard on all proceedings insofar as "pertinent information regarding the child" is relevant to the circuit court's consideration. *See* Syl. Pt. 1, *Jonathan G.*, 198 W. Va. 716, 482 S.E.2d 893; *Kristopher O.*, 227 W. Va. 184, 706 S.E.2d 381; *Beane*, 2018 WL 2467794.[22]

If this Court is going to craft a standard of review for a circuit court's decision to grant or deny intervenor status as an expansion of their participation rights under the statute to those who are not entitled to it, I agree that it would be an abuse of discretion standard. I simply disagree that the standard of review has not already been conclusively decided and believe the injection of "permissive intervention" as opposed to any expansion of rights of participation unnecessarily muddies the waters. We have already afforded the circuit courts the discretion to set the parameters of participation for those second-tier,

---

[22] *C.H.*, 240 W. Va. at 739, 815 S.E.2d at 850.

"right-to-be-heard" only classifications. *C.H.*'s fourth syllabus point already reiterates that the participation of those second-tier classifications "are subject to *discretionary* limitations on the level and type of participation as determined by the circuit court."[23] Indeed, we have discussed that "'[t]ypically, a grant of discretion to a lower court commands this Court to extend substantial deference to such discretionary decisions.'"[24]

For those reasons, I disagree that the standard of review for "permissive intervention" should be placed on this statute that does not address *intervention*, but merely the scope of participation of the parties. I further disagree that a syllabus point is necessary in light of our prior holdings addressing the circuit court's discretion in determining the scope of participation of the parties. I am authorized to state that Justice Wooton joins in this concurring opinion.

---

[23] Emphasis added.

[24] *In re Michael Ray T.*, 206 W. Va. 434, 441, 525 S.E.2d 315, 322 (1999) (quoting *State v. Allen*, 208 W. Va. 144, 539 S.E.2d 87 (1999)).